**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 05-1159 & 08-2525

WALTER DIQUE,

Appellant

v.

NEW JERSEY STATE POLICE; STATE OF NEW JERSEY;
C.L. PAGANO; CARSON DUNBAR; JOHN MULVEY; G.
VONA; M. SANCHEZ; JOHN DOE 1-10

On Appeal from the United States District Court
for the District of New Jersey
(D. C. No. 2-04-cv-00563)
District Judge:  Hon. Katharine S. Hayden

Argued on May 11, 2009

Before: AMBRO, ROTH and ALARCÓN*, Circuit Judges

(Opinion filed: May 6, 2010)

David Rudovsky, Esquire **(Argued)**
Kairys, Rudovsky, Messing and Feinberg, LLP
718 Arch Street, Suite 501 South
Philadelphia, PA   09106

Benjamin Levine, Esquire
Lesnevich & Marzano-Lesnevich
21 Main Street
Court Plaza South
Hackensack, NJ 07601

Counsel for Appellant Walter Dique

Anne Milgram
Attorney General of New Jersey
Lewis A. Scheindlin, Esquire
Assistant Attorney General
Larry R. Etzweiler, Esquire **(Argued)**
Senior Deputy Attorney General
Wendy A. Reek, Esquire
Richard J. Hughes Justice Complex
25 Market Street
P. O. Box 112
Trenton, NJ   08625

---

*Honorable Arthur L. Alarcón, Senior United States Circuit Judge for the Ninth Circuit, sitting by designation.

Tamara L. Rudow, Esquire
Weber, Gallagher, Simpson, Stapleton, Fires & Newby
2000 Market Street, Suite 1300
Philadelphia, PA   19103

       Counsel for Appellees New Jersey State
       Police; State of New Jersey; D. L.
       Pagano; Carson Dunbar


Leonard C. Leicht, Esquire **(Argued)**
Morgan, Melhuis, Abrutyn
651 West Mount Pleasant Avenue, Suite 200
Livingston, NJ   07039-1673

       Counsel for Appellees John Mulvey and
       G. Vona

O P I N I O N

**ROTH**, Circuit Judge:

This appeal presents the question of when Walter Dique's Fourteenth Amendment selective-enforcement claim accrued. Dique appeals the District Court's final order, granting summary judgment in favor of Clinton Pagano, John Mulvey, and Glen Vona (Officers) on his claim because it was time barred.  Dique

argues that he timely filed suit because his claim accrued in April 2002, when his conviction was vacated; the Officers, by contrast, argue that the claim accrued in January 1990, when the wrongful conduct occurred.

In *Gibson v. Superintendent of New Jersey Department of Law & Public Safety—Division of State Police*, 411 F.3d 427 (3d Cir. 2005), we held, relying on the rule of *Heck v. Humphrey*, 512 U.S. 477 (1994), that the statute of limitations for a selective-enforcement claim "did not begin to run until [the] sentence was vacated." *Gibson*, 411 F.3d at 441. We believe, however, that the Supreme Court's decision in *Wallace v. Kato*, 549 U.S. 384 (2007), which clarified the *Heck* rule, extends to Fourteenth Amendment selective-enforcement claims and thus overrides our decision in *Gibson*.

## I. BACKGROUND

### A. Facts

On January 7, 1990, Walter Dique was the victim of racial profiling.[1] At about 10 p.m. that night, Dique was driving a livery car for hire on the New Jersey Turnpike. Dique is a native of Colombia; his two passengers were Hispanic. Mulvey, a state trooper, drove up behind Dique and flashed his overhead

---

[1] Because Dique appeals from an order granting summary judgment, we view the evidence in the light most favorable to Dique and accept his allegations as true. *See, e.g.*, *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995).

4

lights. Dique pulled over to the side of the road. According to Mulvey, he stopped Dique for a speeding violation. Mulvey then ordered Dique out of the car because the traffic noise and Dique's accent made it difficult for Mulvey to hear Dique's responses to his questions. During questioning, Mulvey noticed that one of the passengers had a "white powdery substance in his mustache." This prompted Mulvey to seek Dique's written consent to search the car. Dique consented. Mulvey found drugs in the car, and he and trooper Vona, who had arrived at the scene, arrested Dique and the two passengers.[2]

Nine years later, in June 1999, Dique was convicted in state court on drug-related charges, arising from the stop.[3] He was sentenced to fifteen years in prison. In April 2002, however, the State of New Jersey moved to vacate Dique's conviction and dismiss the indictment because "colorable issues of racial profiling" existed at the time of the arrest. Dique was released from prison three days later.

---

[2]The third appellee, Pagano, was the superintendent of the New Jersey police department at the time of Dique's arrest.

[3]Officers contend that the nine-year gap was attributed to Dique becoming a fugitive. This contention cannot be confirmed by the Record. We are not, however, concerned with ascertaining the cause of the gap because it is inconsequential for purposes of this appeal.

### B. District Court Proceedings

In February 2004, Dique filed suit based on the January 1990 traffic stop, alleging violations of federal law, including 42 U.S.C. §§ 1983 and 1985, and of state law. His list of defendants included the New Jersey State Police, the State of New Jersey, and the Officers.[4] Dique alleged two section 1983 claims: the first claim's underlying constitutional violation was a Fourth Amendment claim for false arrest, and the second's was a Fourteenth Amendment claim for selective-enforcement.[5]

In December 2004, the District Court dismissed Dique's federal law claims under Federal Rule of Civil Procedure 12(b)(6) because they were time barred; the court declined to exercise supplemental jurisdiction over his remaining state law claims. Dique appealed. In December 2005, we, at the parties' request, issued a limited remand to the District Court "as to Dismissal of [Dique's] Fourth Amendment False Arrest Claim

---

[4]The three Officers are the only remaining are the only remaining defendants-appellees.

[5]To establish a selective-enforcement claim, a plaintiff must demonstrate (1) that he was treated differently from other similarly situated individuals, and (2) "that this selective treatment was based on an 'unjustifiable standard, such as race, or religion, or some other arbitrary factor, . . . or to prevent the exercise of a fundamental right.'" *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (quoting *Holder v. City of Allentown*, 987 F.2d 188, 197 (3d Cir. 1993)).

and Fourteenth Amendment Selective Enforcement Claim as Barred by the Statute of Limitations" in light of our decision in *Gibson*, 411 F.3d 427. We retained jurisdiction of the appeal.

On remand, the District Court ruled that Dique's two § 1983 claims survived in light of *Gibson*, and it allowed discovery to proceed. During discovery, the Supreme Court decided *Wallace v. Kato*, 549 U.S. 384 (2007). Based on *Wallace*, the Officers filed summary judgment motions, contending that the statute of limitations barred Dique's claims. The District Court granted the motions, holding that at no time following Dique's arrest in 1990 was there a bar to his bringing a civil complaint because Dique's claims did not "necessarily implicate the conviction."[6] Analyzing Dique's selective-enforcement claim, the court concluded that it had accrued in January 1990, but that principles of equitable tolling delayed the running of the statute of limitations until July 24, 2001. On that date, Dique's counsel had submitted a certification to a New Jersey state court that he was aware of 90,000 pages of documents which revealed a state-wide practice of selective enforcement based on race. The State, after withholding the documents for some time, had released them in April 1999 and November 2000. Thus, the District Court concluded that by July 2001 – over two years before Dique filed suit – Dique had information vital to his selective-enforcement claim.

---

[6]As we noted in *Gibson*, a successful claim of selective-enforcement "would have necessarily invalidated Gibson's conviction . . .." *Gibson*, 411 F.3d at 441. Thus, success in the selective-enforcement claim would implicate the conviction.

Dique appeals the District Court's order, arguing that it erred in holding that his selective-enforcement claim was time barred.[7] We ordered the Clerk of this Court to vacate the stay in the earlier appeal and to consolidate it with this one.

## II. <u>DISCUSSION</u>

We have jurisdiction over this consolidated appeal from final orders of the District Court under 28 U.S.C. § 1291. We review the District Court's grant of summary judgment *de novo*. *E.g.*, *DIRECTV Inc. v. Siejas*, 508 F.3d 123, 125 (3d Cir. 2007). Furthermore, we apply the same standard as the District Court in determining whether summary judgment was appropriate. *E.g.*, *U.S. ex rel. Kosenske v. Carlisle HMA, Inc.*, 554 F.3d 88, 94 (3d Cir. 2009).

### A. Dique's Fourteenth Amendment selective-enforcement claim

Section 1983 does not create substantive rights. *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). It, instead, provides a federal cause of action for the violation of a federal right. *See id.* State law, however, determines when the claim accrues; state law provides the statute of limitations applicable to a section 1983 claim. *See Wallace*, 549 U.S. at 387. A section 1983 claim is characterized as a personal-injury claim and thus is governed by the applicable state's statute of

---

[7]On appeal, Dique abandons his Fourth Amendment false-arrest claim.

limitations for personal-injury claims. *Cito v. Bridgewater Twp. Police Dep't*, 892 F.2d 23, 25 (3d Cir. 1989). New Jersey, as the parties agree, is the applicable state here; it mandates a two-year statute of limitations period for personal-injury torts. N.J. Stat. Ann. § 2A:14–2 (West 2004). Thus, a section 1983 claim arising in New Jersey has a two-year statute of limitations. *See Montgomery v. De Simone,* 159 F.3d 120, 126 n.4 (3d Cir. 1998).

State law, unless inconsistent with federal law, also governs the concomitant issue of whether a limitations period should be tolled. *Wilson v. Garcia*, 471 U.S. 261, 269 (1985), *superseded by statute on other grounds*, 28 U.S.C. § 1658(a); *Ammlung v. City of Chester*, 494 F.2d 811, 815 (3d Cir. 1974). Under New Jersey law, a statute of limitations can be tolled based upon equitable principles, including the discovery rule. *Freeman v. State*, 788 A.2d 867, 878 (N.J. Super. Ct. App. Div. 2002). The discovery rule postpones a claim from accruing if a plaintiff is reasonably unaware that he has suffered an injury or, even though he is aware of the injury, that it was the fault of an identifiable person. *See Caravaggio v. D'Agnostini*, 765 A.2d 182, 187 (N.J. 2001). As set out by the New Jersey Supreme Court, the accrual of the claim will be postponed until the "injured party discovers, or by exercise of reasonable diligence and intelligence should have discovered[,] that he may have a basis for an actionable claim." *Lopez v. Swyer*, 300 A.2d 563, 565 (N.J. 1973); *see Lapka v. Porter Hayden Co.*, 745 A.2d 525, 530 (N.J. 2000).

Federal law, on the other hand, governs the issue of what constitutes accrual. *Wallace*, 549 U.S. at 388. Accrual is the

occurrence of damages caused by a wrongful act – "when a plaintiff has 'a complete and present cause of action,' that is, when 'the plaintiff can file suit and obtain relief.'" *Id.* (quoting *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)). As the Court in *Wallace* explained, "'the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages.'" *Id.* at 391 (quoting 1 Calvin W. Corman, *Limitation of Actions* § 7.4.1 (1991)).

The parties' dispute hinges on when Dique's claim accrued. What blurs the application here of the accrual rule – that a claim accrues when the wrongful act results in damages – is the decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), that a claim for malicious prosecution accrues only where "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *See id.* at 486–87 (footnote omitted). The Court held that Heck's claim was not cognizable under section 1983 because recovery would "necessarily imply the invalidity" of his outstanding conviction. *Id.* at 486–87. The Court commented that "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to section 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement." *Id.* at 486. *Heck* left open the question of whether a claim is cognizable under section 1983 if its success would necessarily imply the invalidity of a future conviction.

10

Following up on this open question, in *Smith v. Holtz*, 87 F.3d 108 (3d Cir. 1996), we approved the application of *Heck* to future convictions in holding "that a claim that, if successful, would necessarily imply the invalidity of a conviction on a pending criminal charge is not cognizable under § 1983." *Id.* at 113.[8] We reasoned that, "[i]n terms of the conflicts which *Heck* sought to avoid, there is no difference between a conviction which is *outstanding* at the time the civil rights action is instituted and a *potential* conviction on a pending charge that may be entered at some point thereafter." *Id.*

Then in *Gibson*, we applied *Heck* to defer accrual of a § 1983 selective-enforcement claim in which, at the time the

---

[8]Sister courts of appeal have also extended *Heck* to preconviction situations in which a § 1983 claim, if successful, would necessarily imply the invalidity of a potential or future conviction. *See, e.g.*, *Fox v. DeSoto*, 489 F.3d 227, 234 (6th Cir. 2007) ("This court, drawing on the reasoning in *Heck* . . . , joined other courts in extending application of *Heck* . . . to certain pre-conviction circumstances. As a result, we held that when a § 1983 claim would imply the invalidity of a *future* conviction, the statute of limitations would not begin to run until the criminal charges have been dismissed" (alteration in original) (footnote omitted)); *Harvey v. Waldron*, 210 F.3d 1008, 1014 (9th Cir. 2000); *Beck v. City of Muskogee Police Dept.*, 195 F.3d 553 (10th Cir. 1999); *Covington v. City of N.Y.*, 171 F.3d 117, 124 (2d Cir. 1999); *Uboh v. Reno*, 141 F.3d 1000, 1006–07 (11th Cir. 1998); *Washington v. Summerville*, 127 F.3d 552, 556 (7th Cir. 1997).

wrongful act resulted in damages, there was no outstanding conviction but only the prospect of a future conviction. *See Gibson*, 411 F.3d at 431–33, 441. Gibson brought a § 1983 action in which he asserted, *inter alia*, a Fourth Amendment false arrest claim and a Fourteenth Amendment selective-enforcement claim. *See Gibson*, 411 F.3d at 432. The facts in *Gibson* mirror those in this case. In 1992, Gibson, an African-American, was arrested after the car in which he was a passenger was pulled over on the New Jersey Turnpike. The New Jersey police officers found drugs and arrested Gibson and the other occupants of the car. Gibson was then convicted of state drug-related offenses in 1994. In 2002, however, Gibson's conviction was vacated because of colorable racial-profiling issues. *Id.* at 432. Gibson filed suit in 2002.[9] The District Court dismissed Gibson's claims because they were barred by the statute of limitations. *Id.* at 431.

We reversed, allowing Gibson to proceed with his § 1983 claims because we concluded that they accrued when his conviction was vacated in 2002. *Id.* at 441, 446. Analyzing the selective-enforcement claim, we reasoned that "[b]ecause a successful claim of selective enforcement under the Fourteenth Amendment Equal Protection Clause would have necessarily invalidated Gibson's conviction, under the *Heck* deferred accrual rule the statute of limitations did not begin to run until

---

[9]Gibson was also, like Dique, aware of the documents revealing a state-wide practice of selective enforcement based on race that the State released in April 1999 and November 2000. *See Gibson*, 411 F.3d at 445.

his sentence was vacated and this claim is not untimely." *Id.* at 441.

Dique argues that *Gibson* is binding precedent that we must follow. The Officers, by contrast, argue that the Supreme's Court 2007 decision in *Wallace* repudiates *Gibson* and mandates accrual when the wrongful conduct occurred. Because an intervening Supreme Court decision is a "sufficient basis for us to overrule a prior panel's opinion," we are able to bypass our general rule of not overruling a prior panel's opinion without referring the case to the full Court. *E.g.*, *Lebanon Farms Disposal, Inc. v. County of Lebanon*, 538 F.3d 241, 250 n.16 (3d Cir. 2008).

In *Wallace*, the Court refused to extend *Heck* to a § 1983 claim for false arrest in which there was no outstanding conviction at the time of the accrual, *i.e.*, the arrest. *See Wallace*, 549 U.S. at 393. The Court held that "the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Id*. at 397. The Court also clarified that the *Heck* bar is applicable only when, at the time the § 1983 suit would normally accrue, there is an *existing* criminal conviction:

> "[T]he *Heck* rule for deferred accrual is called into play only when there exists a conviction or sentence that has *not* been . . . invalidated, that is to say, an outstanding criminal judgment. It

13

delays what would otherwise be the accrual date of a tort action until the setting aside *of an extant conviction* which success in that tort action would impugn."

*Id.* at 393 (internal quotation marks omitted). The Court clarified that it was not holding that "an action which would impugn *an anticipated future conviction* cannot be brought until that conviction occurs and is set aside." *Id.*

The impracticality of such a rule should be obvious. In an action for false arrest it would require the plaintiff (and if he brings suit promptly, the court) to speculate about whether a prosecution will be brought, whether it will result in conviction, and whether the pending civil action will impugn that verdict, all this at a time when it can hardly be known what evidence the prosecution has in its possession. And what if the plaintiff (or the court) guesses wrong, and the anticipated future conviction never occurs, because of acquittal or dismissal? Does that event (instead of the *Heck*-required setting aside of the extant conviction) trigger accrual of the cause of action? Or what if prosecution never occurs—what will the trigger be then?

*Id*. (citations omitted). Following *Wallace*, we will not embrace this "bizarre extension of *Heck*," and, accordingly, we hold that

14

*Gibson*'s (and *Smith*'s) interpretation of *Heck* is now supplanted by *Wallace*. Henceforth, in a case of selective-enforcement we will no longer require that the complainant have been convicted and have had that conviction reversed, expunged or invalidated. If we were to do so, we would be putting the complainant in the "bizarre extension of *Heck*" where the cause of action might never accrue if there were no prosecution or if there were a dismissal or an acquittal.

Under *Wallace* then, the statute of limitations "beg[an] to run at the time [Dique] bec[ame] detained pursuant to legal process." *See Wallace*, 549 U.S. at 397. When Dique was stopped on the New Jersey Turnpike, as the Court in *Wallace* stated, "there was in existence no criminal conviction that the [§ 1983] cause of action would impugn; indeed, there may not even have been an indictment." 549 U.S. at 393. Nor, at that time, could one determine if there would ever be an indictment or a conviction – this is an important distinction from a *Heck*-type case in which malicious prosecution involves the indictment and trial process, along with the conviction.

Although, as we just noted, a Fourteenth Amendment selective-enforcement claim will accrue at the time that the wrongful act resulting in damages occurs, Dique's claim did not accrue until July 2001 because the discovery rule postponed accrual. In 1990 he was reasonably unaware of his injury because Mulvey purported to stop his car for a speeding violation. It was not until July 2001, when his attorney became aware of the extensive documents describing the State's

15

pervasive selective-enforcement practices, that Dique discovered, or by exercise of reasonable diligence should have discovered, that he might have a basis for an actionable claim. His claim accrued at that time. Because he asserted his selective-enforcement claim over two years later, the statute of limitations bars it.[10]

## B. Dique's remaining arguments

Dique also argues that the District Court erred in its December 2004 order in dismissing his 42 U.S.C. § 1985 conspiracy claim under Federal Rule of Civil Procedure 12(b)(6). We review the District Court's decision to dismiss

---

[10]Throughout his briefing, Dique refers interchangeably to a Fourteenth Amendment selective-prosecution claim, likely because a selective-prosecution claim could possibly benefit from the *Heck* bar. But the two are different Fourteenth Amendment claims. *Compare Hill*, 411 F.3d at 125 (stating the elements of a selective-enforcement claim), *with Gov't of Virgin Islands v. Harrigan*, 791 F.2d 34, 36 (3d Cir. 1986) (stating the elements of a selective-prosecution claim). Dique failed to raise a selective-prosecution claim in his pleadings or motions before the District Court. As such, it is waived on appeal. *E.g.*, *DIRECTV Inc. v. Seijas*, 508 F.3d 123, 125 n.1 (3d Cir. 2007) ("It is well established that arguments not raised before the District Court are waived on appeal."); *Huber v. Taylor*, 469 F.3d 67, 74 (3d Cir. 2006).

under Rule 12(b)(6) *de novo.  E.g.*, *Phillips v. County of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008).

Dique's argument fails for two reasons.  First, he waived this argument by not raising it before the District Court.  His complaint merely lists 42 U.S.C. § 1985 in a list of statutes conferring jurisdiction.  He, however, did not provide the elements of the claim in any of the seven counts (nor, for that matter, anywhere else in the complaint).  *See Ammlung*, 494 F.2d at 814 (holding that Ammlung's complaint failed to plead a conspiracy claim because she neglected to assert any facts related to the claim's elements).  Second, even if we found the argument had been preserved, the statute of limitations had expired.  A section 1985 claim accrues when a plaintiff knew or should have known of the alleged conspiracy.  *Bougher v. Univ. of Pitts.*, 882 F.2d 74, 80 (3d Cir. 1989).  The New Jersey two-year statute of limitations applies to section 1985 claims and runs from the date of each overt act causing damage to a plaintiff.  *See Cito*, 892 F.2d at 25; *Bougher*, 882 F.2d at 80. Because Dique was reasonably unaware of his injury based on the Officers' alleged conspiracy, the discovery rule postponed accrual until July 2001. Due to the fact, however, that he filed his conspiracy claim more than two years later, it, like his selective-enforcement claim, is time barred.[11]

---

[11]Dique's final argument is incoherent.  He simply states that Pagano "is properly named as a party because of his direct involvement in the constitutional violations."  But the District Court never even intimated otherwise.  Moreover, whether

17

## III. **CONCLUSION**

For the reasons explained above, we conclude that the two-year statute of limitations bars Dique's 42 U.S.C. §§ 1983 and 1985 claims. We will thus affirm the District Court's order granting summary judgment for the Officers.

---

Pagano is properly joined in this suit is immaterial since the statute of limitations bars disposition on the merits.