NOT PRECEDENTIAL

CLD-243

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1898
_____

DANIEL WOODS,
                                        Appellant

v.

FIRST CORRECTIONAL MEDICAL INC.; CORRECTIONAL MEDICAL SERVICES
INC.; L.P.N. LISA SUGAR; SHARI CAIN; R.N. JAMILLA MCKENZIE;
NURSE VERIA MURPHY; RICHARD OKONIBO; JOHN DOE; JANE DOE;
RONNIE MOORE, Health Services Administrator; INVESTIGATOR BRENDA
LUCAS; JAMES T. VAUGHN CORRECTIONAL CENTER; DR. NIEZ; JOHN/JANE
DOE DIRECTOR OF MEDICAL AT DCC 2007-2008
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil No. 08-cv-00397)
District Judge:  Honorable Leonard P. Stark
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
and for Possible Summary Action Under Third Circuit LAR 27.4 and I.O.P. 10.6
July 21, 2011
Before:  RENDELL, FUENTES AND SMITH, Circuit Judges

(Opinion filed August 18, 2011)
_____

OPINION
_____

PER CURIAM

Daniel Woods, a Delaware state prisoner incarcerated in the James T. Vaughn Correctional Center ("JTVCC"), appeals pro se from the order of the United States District Court for the District of Delaware granting Defendants' motion for summary judgment. For the following reasons, we will summarily affirm.

I.

We write for the parties' benefit and recite only the facts essential to our disposition. In May 2007, after being diagnosed with Hepatitis C, Woods was referred to Dr. Lawrence McDonald, a former employee of Correctional Medical Services, Inc.'s ("CMS"),[1] to initiate Interferon protocol to treat Woods' condition. Treatment consisted of Pegasys and Ribavirin injections. Dr. McDonald also wrote orders for Woods to receive nutritional supplements throughout the course of his treatment.

Woods alleged that, despite Dr. McDonald's directives, he was denied proper treatment by several CMS nurses. Specifically, he claimed that they: 1) incorrectly administered his injections; 2) changed physician orders so that Woods did not receive his prescribed nutritional supplements; and 3) refused treatment, including necessary medication, on several occasions. In June 2008, Woods filed a complaint in the District Court pursuant to 42 U.S.C. § 1983, alleging that the Defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Woods sought money damages.

---

[1] CMS was the medical services contract provider for the Delaware Department of Correction from July 2005 through June 2010. Dr. McDonald was not named in the action.

Several of the Defendants filed motions to dismiss, which the District Court granted because they were either immune from suit or had not been timely served with a copy of the complaint. At the close of discovery, the remaining Defendants, which included CMS, Lisa Sugar, Robert Okinobo, Shari Cain, and Jamilla Mickenzie (collectively "the Medical Defendants"), filed a motion for summary judgment. They also moved to strike a supplemental letter that Woods filed with the Court regarding a 2006 investigation of five Delaware prison facilities. Woods filed a cross-motion for summary judgment. After reviewing the submissions, the District Court granted the Medical Defendants' motions for summary judgment and to strike, and denied Woods's motion for summary judgment. Woods timely appealed.

II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We review the District Court's decision to grant a motion to dismiss de novo. See Dique v. N.J. State Police, 603 F.3d 181, 188 (3d Cir. 2010). We also exercise plenary review over the District Court's entry of summary judgment, viewing the underlying facts and all reasonable inferences therefrom in the light most favorable to the non-moving party. See Ray v. Twp. of Warren, 626 F.3d 170, 173 (3d Cir. 2010). After reviewing the record on appeal, we conclude that the District Court committed no reversible error in disposing of Woods' claims.

III.

As an initial matter, we conclude that the District Court correctly dismissed Defendants Ronnie Moore, Veria Murphy, Dr. Niez, John Doe, Jane Doe, John/Jane Doe

Director for Medical Services at DCC 2007 2008, and First Correctional Medical Services from the action because Woods failed to timely identify and/or serve those defendants with a copy of the complaint.

Defendants JVCC and Brenda Lucas were also properly dismissed from the action because Woods failed to state viable claims against them. As to JVCC, under the Eleventh Amendment a Delaware state prison is immune from suit in federal court. See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993). While states can waive their Eleventh Amendment immunity, see Koslow v. Commonwealth of Pennsylvania, 302 F.3d 161, 168 (3d Cir. 2002), Delaware has not done so, see Green v. Howard R. Young Corr. Inst., 229 F.R.D. 99, 102 (D. Del. 2005) (Jordan, J.). Accordingly, we agree that Woods' section 1983 claims against the JVCC for monetary damages are barred.

With regard to Brenda Lucas, Woods alleged that she failed to act upon several of the administrative grievances that he filed. Lucas was identified in the complaint as an investigator in several of Woods' grievances. We agree with the District Court that because a prisoner has no free-standing constitutional right to an effective grievance process, see Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991), Woods cannot maintain a constitutional claim against Lucas based upon his perception that she ignored and/or failed to properly investigate his grievances.

Eighth Amendment Claims

The Eighth Amendment, through its prohibition on cruel and unusual punishment, mandates that prison officials not act with deliberate indifference to a prisoner's serious

4

medical needs by denying or delaying medical care. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). In order to sustain a constitutional claim, a prisoner must make: 1) an "objective" showing that the prisoner's medical needs were sufficiently serious; and 2) a "subjective" showing that the prison official acted with a sufficiently culpable state of mind. <u>Montgomery v. Pinchak</u>, 294 F.3d 492, 499 (3d Cir. 2002). "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." <u>Giles v. Kearney</u>, 571 F.3d 318, 330 (3d Cir. 2009).

<u>Nutritional Supplements</u>

Woods alleged that Defendant Shari Cain unilaterally changed Dr. McDonald's orders regarding his dietary supplements. The record reflects that, at various times, Woods was prescribed either Boost or Resource 2.0. Woods claimed that around August 2007, Cain unilaterally changed Dr. McDonald's orders of two cans of Boost per day to one can per day of Resource 2.0. However, Dr. McDonald is unequivocal that when the medical department switched supplements from Boost to Resource 2.0, he ordered that Woods be given only one can of Resource 2.0 per day. Further, the record reflects that, on August 1, 2007, Cain entered a "clarification note" on Woods' chart stating that Dr. McDonald had changed Woods' order. Woods presented no evidence demonstrating that Cain changed Dr. McDonald's order and thus acted with deliberate indifference to his medical needs. Therefore, we will affirm the District Court's grant of summary judgment on this claim.

<u>Failure to Treat</u>

5

Woods also alleged that Defendant Lisa Sugar refused to treat and assess his conditions at various times. Specifically, he claimed that she did not adequately respond to several of his sick call complaints. As an initial matter, Woods presented no evidence to suggest that Sugar was aware of all of his complaints. In any event, the record reflects that Sugar provided Woods with treatment, both through regularly scheduled appointments and when she became apprised of Woods' written requests for treatment. On one occasion, when Sugar attempted to treat Woods in his unit, but was unable to because he was in the shower, Sugar ordered another nurse to examine him, and later wrote Woods a prescription for his condition. Based on the record, we agree with the District Court that a reasonable jury could not find that Sugar acted with deliberate indifference to Woods' medical needs.

Injections

Woods claimed that the Medical Defendants used incorrect needles to administer his injections, and that the syringes could not hold the proper dose of the medication. However, Woods does not dispute that he received sufficient doses of the medication, nor does he claim that his Hepatitis C treatment was unsuccessful.[2] In addition, there is no record evidence to support his claim that incorrect syringes were used during the course of his treatment. Therefore, a reasonable jury could not find for Woods on this issue.

Woods also claimed that because the Medical Defendants failed to rotate the site of his injections, he experienced nausea, sores, jaundice, dizziness, weakness, nose

_____

[2] Dr. McDonald discharged Woods from the Hepatitis C Infectious Disease Clinic in July 2009 because Woods' viral load was undetectable in his blood work.

6

bleeds, and infections. With the exception of the nose bleeds and infections, the conditions that Woods claimed to have suffered are known side-effects of Interferon treatment. Woods acknowledged at his deposition that Dr. McDonald's informed him about those possible side-effects. And, although Dr. McDonald was not able to determine the cause of Woods' nose-bleeds, he did not attribute them to the alleged failure to rotate the injection site.[3] Woods did not present any information contradicting Dr. McDonald's medical opinion. Moreover, the record reflects that, when Woods raised the issue that the injection site was not rotated with sufficient frequency, steps were taken to remedy the problem.

Accordingly, we agree with the District Court that there is insufficient evidence upon which a jury could conclude that the Medical Defendants disregarded the risk to his safety during the administration of his injections.

State Law Claim

Lastly, we conclude that the District Court properly granted Defendants' motion for summary judgment as to Woods' state law claim of medical negligence. Under Delaware state law, when a party alleges medical negligence, that party is required to produce an affidavit of merit, signed by an expert witness, when the complaint is filed. See 18 Del. C. § 6853. The record reflects that Woods filed no such affidavit, nor did he timely move for an extension to do so. Id.

_____

[3] Dr. McDonald reached a similar conclusion regarding Woods' infection, which Woods does not allege occurred at the site of any of his injections. Although the record reflects that Woods was prescribed antibiotics at one point, it was because he had been diagnosed with sinusitis.

7

For all of these reasons, we conclude that the District Court properly entered summary judgment in favor of the Medical Defendants. We also conclude that the District Court properly granted the Medical Defendants' motion to strike. As mentioned, Woods asked the Court to consider a letter regarding the investigation of five Delaware prison facilities. The investigation found substantial civil rights violations at several of those facilities and resulted in the entry of an agreement between the Department of Justice and State of Delaware. However, the agreement clearly states that it may not be used as evidence of liability in any other legal proceeding. Therefore, the District Court correctly declined to consider it as evidence in Woods' case.[4]

As Woods' appeal presents no substantial question, we will summarily affirm. See Third Cir. LAR 27.4; I.O.P. 10.6. Woods' "Motion for Appointment of Counsel and Request to Reverse and Remand the Lower Court's Ruling" is denied. See Tabron, 6 F.3d at 155-56. Woods' motion for default is also denied.

---

[4] To the extent that Woods also argues that the District Court improperly denied his requests to appoint counsel, because his claims were neither complex nor meritorious, the District Court did not abuse its discretion in denying his requests. See Tabron v. Grace, 6 F.3d 147, 155-56 (3d Cir. 1993).