NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1063
_____

SOON PARK,
                                        Appellant

v.

SECRETARY UNITED STATES DEPARTMENT OF VETERANS AFFAIRS;
JOHN DOES 1-10; JANES DOES 1-10
_____

On Appeal from the United States District Court
for the District of New Jersey
(D. C. No. 2-10-cv-06762)
District Judge:  Honorable Dickinson R. Debevoise
_____

Submitted Under Third Circuit LAR 34.1(a)
November 19, 2014

Before:  SMITH, HARDIMAN and BARRY, *Circuit Judges.*

(Filed: December 4, 2014)
_____

OPINION[*]
_____

HARDIMAN, *Circuit Judge*.

       Soon Park appeals the District Court's summary judgment on her Title VII claim

_____

       [*]This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

for national origin discrimination. We will affirm, essentially for the reasons stated by Judge Debevoise in his thoughtful opinion.

I

Park works as a medical technologist at the James J. Peters VA Medical Center in Bronx, New York (the VA), where she has been employed since 1992. Originally from South Korea, Park has somewhat limited fluency in English. She alleged that she has been the target of workplace harassment over the course of her employment with the VA. Although a few of the incidents she cited have no arguable connection to her national origin, some do. Specifically, she claimed that one of her supervisors, Darryl Williams, was "against her" and tried to "sabotage" her, would pretend not to understand her English, and once scolded her for failing to distinguish between the words "order" and "odor." She also alleged that Williams asked her whether all Koreans were infected by "that special fungus" when she had an infection. Finally, Park experienced situations in which other VA personnel told her they could not understand her English.

According to Park, the harassment did not cease when she left work. She claimed that she saw Williams inside her bedroom at home (although the bedroom door was locked from the inside). Park also believed that she was occasionally followed home from work. On one occasion, Park called another supervisor, Dr. Azra Shahidi, late at night to advise that if she did not report to work the next morning, "something happened to me." Dr. Shahidi recommended that Park see a therapist, but Park refused, worried

2

that doing so might harm her reputation in the Korean community.

The alleged sabotage and harassment culminated with Park's involuntary commitment to the psychiatric ward of the VA hospital in 2008. One morning that year, Park had a conversation with a coworker, Luis Benabe, during which he told her that the VA knew many personal things about her and that there were cameras installed in her home. Park responded that these issues would continue until she died and asked why she had to die to make them stop; Benabe told her if she wanted to die, she should starve herself to death. Park, believing that the conversation was in jest, responded that she could not kill herself, but instead would have to die in a tragic accident. She also asked whether Benabe knew anyone planning to blow up an airplane.[1]

Benabe subsequently reported the conversation to Williams, telling him that Park had asked about suicide methods. Williams reported the conversation to Dr. Shahidi, who decided that they needed to take action to prevent a possible suicide by Park, and summoned a VA supervisor and a mental health care worker to meet with Park. *Id.* Park then was brought into an office with the mental health worker, who attempted to ask her about the conversation with Benabe. Park repeatedly said that she had "no comment." Finally, after she relented and began conversing with the mental health worker, psychiatrist Dr. James Chou came to speak with Park. Dr. Chou eventually coaxed Park

---

[1] Benabe recalls the tone and content of his conversation with Park differently, but for the purposes of her appeal, we construe the facts in the light most favorable to Park.

into the emergency room of the VA hospital to conduct a complete evaluation.  At the conclusion of the evaluation (and after many statements of extreme paranoia by Park), Park told Dr. Chou that if she were actually suicidal, she would not tell anyone.

At that point, Dr. Chou decided that Park was mentally ill and was exhibiting "suicidal ideation."  She was not allowed to leave the emergency room in spite of her energetic protestations and was eventually admitted to the VA's psychiatric ward, where she was supposed to be monitored for 72 hours on suicide watch.  Park was released after just one night, however, after her cousin (a lawyer) convinced the hospital to release her. Park returned to work the following day without incident.  She was subsequently asked to take a leave of absence, returning to work six months later, in April 2009, after another psychiatrist deemed her fit for work.

A year and a half later, Park filed suit in the United States District Court for the District of New Jersey, alleging national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. The District Court entered summary judgment against Park on December 16, 2013, holding that she could not make out a prima facie case of discrimination. This timely appeal followed.[2]

II

We review the District Court's summary judgment de novo and apply the same

---

[2] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291.

4

standard as the District Court. *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010).

Central to Park's case is the notion that her involuntary commitment was the result of national origin discrimination. The District Court, after correctly explaining the analytical framework for a Title VII claim based on adverse employment action, held that Park failed to establish a prima facie case under Title VII because she could not show the required nexus between her national origin and her involuntary commitment. *Park v. Shinseki*, 2013 WL 6627604, at *6 (D.N.J. Dec. 16, 2013). Park contends that this decision was incorrect because it "ignored the surrounding harassment leading up to [her] involuntary commitment." Appellant's Br. 23. We disagree.

As the District Court aptly stated, "the record suggests that [Park's commitment] had everything to do with the fact that she suffered from paranoid delusions and had been mentioning the notion of suicide to her coworkers," and nothing to do with her status as a Korean immigrant. *Park*, 2013 WL 6627604, at *6. Park repeatedly shared paranoid thoughts with her coworkers and supervisors (including believing that she was being followed home, and that she had seen Williams inside her bedroom). She engaged in a lengthy, albeit joking, conversation with Benabe about how she might bring about her own death in order to make her problems go away. The record shows that these events led to Park's involuntary commitment. By contrast, the alleged discriminatory conduct is unrelated to her commitment because Dr. Chou, who convinced Park to go to the

5

emergency room, had no connection whatsoever to the alleged harassment. There is no evidence to suggest that Dr. Chou harbored any discriminatory animus toward Koreans. Because Park failed to show any nexus between her national origin and her involuntary commitment, the District Court did not err when it held that she did not establish a prima facie case. *See, e.g.*, *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 & n.6 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 & n.13 (1973) (noting that while the elements of a prima facie case of employment discrimination vary based on the facts of a case, a plaintiff must show circumstances giving rise to an inference of discrimination—that is, a nexus between the plaintiff's protected trait and the adverse employment action).

Park argues on appeal that the District Court improperly found that "it was in fact medically necessary to commit" her and insists that her commitment was unnecessary. Appellant's Br. 23. This argument misses the mark for two reasons. First, Park is simply incorrect that the District Court found that her commitment was medically necessary—the District Court made no such finding (nor did it need to). Instead, it ruled only that there was no connection between her commitment and her national origin. And second, whether or not the commitment was medically necessary is irrelevant. The critical question under *McDonnell Douglas* and its progeny is whether Park has cited facts sufficient to give rise to an inference that her commitment was based on her status as a Korean immigrant. 411 U.S. at 802. She failed to do so, primarily because the

connections she attempts to make between her alleged harassment and her commitment lack support in the record. Even if her commitment was medically unnecessary, it was still based upon her perceived mental instability and suicidal ideation, not her national origin, as the District Court rightly noted. Thus, she failed to show the required elements of a prima facie case under *McDonnell Douglas*.

Park also argues on appeal that she was discriminated against under a hostile work environment theory. To make out this claim, Park must show that the harassment she suffered was "sufficiently severe or pervasive" that it effectively altered the terms and conditions of her employment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). Most of the incidents Park cites as harassment stem from her limited fluency in English. These incidents fall far short of the "severe or pervasive" standard required to make out a hostile environment claim. A language barrier between coworkers may cause difficulties in the workplace, but as the District Court noted, accounting for a language barrier does not amount to unlawful discrimination. *Park*, 2013 WL 6627604, at *6.

Park does point to one incident—when Williams asked her whether all Koreans were infected by a fungus—that supports her claim of intentional national origin discrimination. But that comment was neither severe nor pervasive enough to support a hostile environment claim because "Title VII is not violated by the 'mere utterance of an . . . epithet which engenders offensive feelings in an employee' or by mere 'discourtesy or rudeness . . . .'" *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d

7

265, 280 (3d Cir. 2001) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)). The inappropriate fungus remark was a classic stray comment and is insufficient to establish a hostile work environment. *See, e.g.*, *Faragher*, 524 U.S. at 788 ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." (internal quotation marks and citations omitted)); *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005) ("[W]e are mindful that 'offhanded comments, and isolated incidents (unless extremely serious)' are not sufficient to sustain a hostile work environment claim." (quoting *id.*)).

Finally, Park makes a procedural argument, namely, that the District Court should not have granted summary judgment because the VA failed to furnish a statement of material facts not in dispute with its motion for summary judgment as required by the District of New Jersey's Local Civil Rule 56.1. Park claims that she was prejudiced by the VA's failure to file a Rule 56.1 statement because she was forced to use the VA's brief to ascertain which facts were undisputed and because, more importantly, there was no clear factual record on which the District Court could rule. We disagree because Park's argument ignores the procedural context of the case. The VA moved to dismiss Park's claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (a motion for which no statement of undisputed material facts is required) or, alternatively, for summary judgment pursuant to Rule 56. The District Court correctly decided that, because it was

8

asked to consider evidence outside the pleadings, it would treat the motion as one for summary judgment. *Park*, 2013 WL 6627604, at \*5 n.6.

Moreover, although the VA did not submit a Rule 56.1 statement, it did submit a "Statement of Relevant Facts," to which Park responded with her own "Statement of Genuine Issues." Park's Statement of Genuine Issues contains 57 numbered paragraphs responding to each fact asserted in the VA's Statement of Relevant Facts, and noting which facts were undisputed. Thus, between the VA's and Park's submissions, the District Court had a clear record of the facts on which to rule. Accordingly, we find no prejudice caused by the absence of a Rule 56.1 statement. Given that the VA made its Rule 56 motion in the alternative to its Rule 12(b)(6) motion, it was within the District Court's discretion to convert the VA's motion to dismiss into a motion for summary judgment. And we conclude that its decision not to require a separate Rule 56.1 statement—especially given that the VA substantially complied with Rule 56.1 via its Statement of Relevant Facts—did not constitute error.

III

The District Court aptly addressed the arguments raised by Park. Because we are unpersuaded by Park's substantive and procedural arguments, we will affirm the judgment of the District Court.