**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-2287
_____

OLUKAYODE DAVID OJO,
                                    Appellant

v.

ANN LUONG; BRIAN ENNESSER; MICHAEL "MIKE" BICKINGS;
SCOTT URBEN; MATTHEW NAHAS; RAY MILLER; TROOPER
ANTHONY SARDANOPOLI; JOHN DOE(S) 5005 (366); JOHN
DOE(S) 6748 (218); JOHN DOE(S) 6808 (218); JOHN DOE(S) 6457
(747); JOHN DOE(S) 6275 (1183); JOHN DOE(S) 6599 (747)
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2-14-cv-04347)
District Judge:  Honorable Jose L. Linares
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 13, 2017
Before:  RESTREPO, SCIRICA and FISHER, Circuit Judges

(Opinion filed September 13, 2017)
_____

OPINION[*]
_____

PER CURIAM

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Olukayode Ojo appeals from the order of the District Court dismissing his complaint. We will affirm. Appellees' motion for leave to file a supplemental appendix is granted. Ojo's motion for leave to file a reply brief out of time is denied, and his motions for leave to file an overlength reply brief and a supplemental appendix are denied as moot.[1]

I.

On July 11, 2011, several FBI agents and New Jersey state police officers were involved in stopping Ojo's car, searching the car and Ojo's person, and interrogating him. Evidence they seized was later introduced at a trial that resulted in Ojo's conviction on charges of wire fraud and possession with intent to use false identification documents. See United States v. Ojo, 630 F. App'x 83 (2d Cir. 2015), cert. denied, 136 S. Ct. 1473 (2016). Ojo has raised several unsuccessful collateral challenges to these convictions.

In the complaint at issue here, Ojo asserted claims arising from the July 11 incident against the FBI agents and police officers under, respectively, Bivens v. Six

---

[1] Ojo—who is not incarcerated—obtained two extensions of time to file a reply brief, which became due on June 29, 2017. Ojo filed his motion for leave to file a reply brief out of time almost one month later on July 28, 2017. Ojo asserts that he could not file a timely reply brief because of sickness. Ojo has not specified the timing or duration of that sickness, which he did not previously mention, and he concedes that he was simply "negligent" in failing to timely request another extension. These assertions do not show good cause for filing an untimely reply brief. We note, however, that Ojo has raised several issues for the first time in his reply brief and that, even if we permitted its filing, arguments raised for the first time in reply generally are waived. See Cottillion v. United Ref. Co., 781 F.3d 47, 61 (3d Cir. 2015).

Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), and 42 U.S.C. § 1983. Ojo claimed in relevant part that defendants: (1) violated his First Amendment rights by preventing him from using his phone and speaking to passers-by during the stop; (2) violated his Fourth Amendment rights by, inter alia, tracing the location of his cell phone and then stopping his car and searching the car and his person; and (3) violated his Fifth Amendment right not to incriminate himself by interrogating him and obtaining statements in violation of Miranda v. Arizona, 384 U.S. 436 (1966).[2]

By order entered April 21, 2015, the District Court screened Ojo's in forma pauperis complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A and dismissed his First and Fourth Amendment claims as untimely. The District Court also dismissed Ojo's Fifth Amendment claims against the FBI agents in their officials capacities but allowed his claims against the agents in their individual capacities to proceed.

The FBI agents then filed a motion to dismiss Ojo's remaining claims under Fed. R. Civ. P. 12(b)(6) or for summary judgment. Ojo opposed the motion. He also requested leave to amend, but the District Court denied it by order entered December 21, 2015. Then, by order entered April 5, 2016, the District Court granted the FBI agents' motion and dismissed Ojo's complaint under Rule 12(b)(6). Ojo appeals.

II.

---

[2] Our disposition does not require us to specify which claims Ojo asserted against which defendants, so we refer collectively to "defendants" without suggesting that any particular defendant was responsible for any of the conduct alleged. We note, however, that Ojo asserted his Fifth Amendment claims against the FBI agents only.

Ojo challenges all three orders referenced above. Ojo specified only the last of those orders in his notice of appeal, but we will review all of them because, inter alia, they are sufficiently related and the defendants have not asserted any prejudice and instead have addressed the merits. See Polonski v. Trump Taj Mahal Assocs., 137 F.3d 139, 144 (3d Cir. 1998). All of Ojo's arguments lack merit.[3]

### A. The April 21 Order

In this order, the District Court: (1) dismissed Ojo's First and Fourth Amendment claims; (2) dismissed his Fifth Amendment claims against the FBI agents in their official capacities; and (3) denied his request for counsel. Ojo challenges each ruling.

First, Ojo asserts that the District Court erred in dismissing his First and Fourth Amendment claims as untimely. Ojo raises no actual argument regarding his First Amendment claims, however, and they were untimely for the reasons that the District Court explained. Ojo's Fourth Amendment claims were as well.

The statute of limitations for those claims is two years. See Estate of Lagano v. Bergen Cty. Prosecutor's Office, 769 F.3d 850, 859-60 (3d Cir. 2014). Most of them accrued when defendants conducted their searches and seizures on July 11, 2011, because Ojo knew or should have known the basis for these claims at that time. See id. at 861;

---

[3] We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the dismissal of a complaint under 28 U.S.C. § 1915(e)(2)(B)(ii) and Rule 12(b)(6). See Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000). In doing so, we may consider publicly available court records. See Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). We review the denial of leave to amend for abuse of discretion. See Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220 (3d Cir. 2011).

Dique v. N.J. State Police, 603 F.3d 181, 185-86, 188 (3d Cir. 2010). Ojo also indisputably knew the basis for most of these claims when he filed a motion to suppress the fruits of the searches in his criminal case on February 27, 2012. The only possible exception is his claim that defendants illegally traced the location of his cell phone. As the District Court explained, however, Ojo knew about the tracing, at the very latest, when the Government addressed it in response to the motion to suppress on April 10, 2012. Thus, the District Court properly concluded that all of these claims are untimely because Ojo did not file his complaint until more than two years later on July 7, 2014. (It appears that Ojo mailed his complaint from prison on July 1, 2014, but using that date as the date of filing does not affect the analysis.)

Ojo argues that the statute of limitations should be tolled because the Government committed fraud and presented perjured testimony at the suppression hearing. Ojo raised his claims of fraud at the suppression hearing in his criminal appeal, and the Second Circuit Court of Appeals rejected them as "meritless and lack[ing] record support." Ojo, 630 F. App'x at 86. In any event, Ojo has not shown how his allegations in this regard prevented him from timely asserting these claims.[4]

---

[4] Defendants argue that these claims also are barred by Heck v. Humphrey, 512 U.S. 477 (1994), because they necessarily imply the invalidity of Ojo's conviction. We need not address that issue except to note that the rule of Heck and Ojo's subsequent conviction did not prevent these claims from accruing when they did or toll the statute of limitations until such time as Ojo's conviction might be invalidated. See Wallace v. Kato, 549 U.S. 384, 392-95 (2007); Dique, 603 F.3d at 187-88.

Second, Ojo argues that the District Court should not have dismissed his Fifth

Amendment claims against the FBI agents in their official capacities with prejudice.  The

District Court properly dismissed the claims on sovereign immunity grounds, see

Chinchello v. Fenton, 805 F.2d 126, 130 n.4 (3d Cir. 1986), and Ojo does not argue

otherwise.  Instead, he argues that the dismissal with prejudice prevented him from

pursuing administrative claims against the FBI agents.  He further argues that we should

permit him to do so now and should rule that his deadline for doing so has been tolled.

Ojo provides no basis for these arguments, and we perceive none.

Finally, Ojo asserts on the first page of his brief that he is challenging the denial of

his request for counsel.  Ojo does not raise any arguments in that regard, and the District

Court did not abuse its discretion in denying Ojo's request for the reasons it explained.

See Tabron v. Grace, 6 F.3d 147, 155-57 (3d Cir. 1993).

### B.    The April 5 Order

In this order, the District Court dismissed Ojo's Fifth Amendment claims against

the FBI agents in their individual capacities.[5]  Ojo alleged that the agents violated his

Fifth Amendment right not to incriminate himself by interrogating him in violation of

Miranda.  As the District Court recognized, the taking of statements in violation of

---

[5] Ojo asserted these claims under Bivens.  Neither we nor the United States Supreme
Court appear to have addressed whether a Fifth Amendment claim may be asserted under
Bivens in this precise context.  We need not do so in this case because, as explained
below, Ojo has not stated a valid claim that the agents violated his Fifth Amendment
rights.  See Hernandez v. Mesa, 137 S. Ct. 2003, 2007 (2017) ("This approach—
disposing of a Bivens claim by resolving the constitutional question, while assuming the

Miranda "is not a basis for a [civil] claim as long as the plaintiff's statements are not used against [him] at trial." See Renda v. King, 347 F.3d 550, 558 (3d Cir. 2003). The District Court permitted these claims to proceed beyond the screening stage because Ojo alleged that both his statements and evidence derived therefrom were used at his trial.

The District Court later concluded on the basis of the trial transcript that Ojo's statements were not used at trial. We agree. In arguing otherwise, Ojo relies solely on the testimony of FBI agent Michael Bickings that he and others drove Ojo to Western Union locations to determine whether Ojo could complete fraudulent transactions. (A.253.) Bickings, however, did not refer expressly or by implication to Ojo's statements. Instead, Bickings merely testified to Ojo's physical visits to various Western Union locations. Ojo does not argue that those visits were themselves compelled testimonial incrimination, and they were not. See Pennsylvania v. Muniz, 496 U.S. 582, 591 (1990) (holding that "compulsion which makes a suspect or accused the source of real or physical evidence does not violate [the Fifth Amendment privilege]") (quoting Schmerber v. California, 384 U.S. 757, 764 (1966)). Ojo argues that Bickings also referenced the statements in the criminal complaint, but we have held that "it is the use of coerced statements during a criminal trial, and not in obtaining an indictment, that violates the Constitution." Renda, 347 F.3d at 559 (emphasis added).

The District Court also concluded that the use at trial of any evidence derived from

---

existence of a Bivens remedy—is appropriate in many cases.").

Ojo's statements did not violate the Fifth Amendment. The District Court was skeptical, however, that the evidence on which Ojo relied actually derived from his statements in the first place. We will affirm on the alternative ground that the suppression hearing and trial transcripts show that it did not.

Ojo argued below that defendants derived from his statements, and then used at trial, evidence regarding an area code 201 cell phone number and incriminating text messages sent to that number. As defendants argue, however, they already knew of the involvement of the 201 cell phone before Ojo made his statements and had obtained a warrant to trace it six days earlier. Indeed, Ojo himself alleges that defendants traced the location of the 201 phone before even making the stop that led to his interrogation. (ECF No. 1 at 2 ¶ 19, 5 ¶ 48.) Defendants later seized the 201 cell phone from Ojo's car and obtained a warrant for the text messages, and Ojo's trial court denied his motion to suppress them and other evidence on the ground that he voluntarily consented to the search of his car. See Ojo, 630 F. App'x at 85. Thus, Ojo cannot show that the 201 cell phone evidence was derived from his statements instead.

We briefly address one final issue regarding these claims. Ojo argued below that his Fifth Amendment rights were violated because his statements were used at his suppression hearing. We have not squarely addressed whether the use of statements taken in violation of Miranda at a suppression hearing violates the Fifth Amendment, cf. Renda, 347 F.3d at 558-59, and our Clerk directed the parties to brief the issue. We need not address it, however, both because Ojo later failed to raise it in his opening brief and

8

because, as defendants argue, any claim in this regard would be untimely. The suppression hearing was held on June 11, 2012, so Ojo would have known of the use of any statements at that time. Ojo filed his complaint more than two years later.

### C.    The December 21 Order and Leave to Amend

Finally, Ojo challenges the District Court's December 21 denial of his request to file an amended complaint. His challenge can also be construed as an argument that the District Court should have granted him leave to amend in its April 5 order instead of dismissing his remaining claims with prejudice. We perceive no abuse of discretion in either event.

Ojo requested leave to amend in his filing at ECF No. 28, but he neither specified how he would amend his complaint nor provided the proposed amendment. The District Court did not abuse its discretion in denying leave to amend without prejudice for that reason. See Lake v. Arnold, 232 F.3d 360, 374 (3d Cir. 2000). Nor did the District Court abuse its discretion by later dismissing Ojo's complaint without providing leave to amend because amendment would have been futile. See id. at 373. Ojo's sole argument on appeal is that he should be permitted to amend his complaint by naming "John Doe" police defendants. Doing so would not cure any of the deficiencies discussed above, and neither Ojo's filings nor our review suggests anything that might.

9

III.

For these reasons, we will affirm the judgment of the District Court. Appellees' motion for leave to file a supplemental appendix is granted and Ojo's motions are denied as explained above.