**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2477
_____

HOLLY ENGLISH; D. DOE; COURTNEY DAVIS;
HOLLY ANN BRILL; ROSEMARY BESEDA; R.T. DOE

v.

CITY OF WILKES-BARRE; ROBERT COLLINS

Holly English; Courtney Davis; Holly Ann Brill; Rosemary Beseda,
Appellants
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No: 3:19-cv-00879)
District Judge: Honorable Malachy E. Mannion
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on March 7, 2023

Before: SHWARTZ, BIBAS, and AMBRO, *Circuit Judges*

(Filed: March 8, 2023)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

BIBAS, *Circuit Judge*.

Once a plaintiff knows that she has been wronged, she must sue promptly, rather than wait to confirm another defendant's responsibility. A Wilkes-Barre police officer allegedly threatened to arrest women and used those threats to force them into sex acts. Years later, the women learned that the police department had received a pattern of complaints against him but failed to act on them. So they sued the city. The District Court dismissed as untimely the claims premised on sex acts that had been coerced more than two years earlier. Because those women could have sued right away but did not, we will affirm.

## I. BACKGROUND

On this motion to dismiss, we take the complaint's factual allegations as true. Robert Collins was a police officer for the city of Wilkes-Barre. From at least 2009 through 2018, he threatened to arrest and charge women, then used that leverage to extort sex acts from them. As early as 2009, one of the women heard that many others had accused him of sexual misconduct. Eventually, half a dozen women came forward. Pennsylvania prosecuted Collins for sexual misconduct, but a jury acquitted him.

In 2019, the six women sued Wilkes-Barre in state court. Two of them, not involved in this appeal, also sued Collins. Their cases were removed to federal court and consolidated into this one. The only claim against Wilkes-Barre is that it had a custom or policy of failing to supervise and discipline Collins and so was deliberately indifferent to plaintiffs' rights. *See* 42 U.S.C. § 1983; *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978).

The District Court dismissed the claims of four plaintiffs who had been victimized between 2009 and 2016. Their claims were untimely, it held, because they had sued after

2

Pennsylvania's two-year statute of limitations had expired. Those four plaintiffs now appeal. We review that dismissal de novo. *Conard v. Pa. State Police*, 902 F.3d 178, 182 (3d Cir. 2018).

## II. PLAINTIFFS WAITED TOO LONG TO SUE

Plaintiffs do not dispute that the applicable statute of limitations is two years. Rather, they argue, it should not have started running until they later learned that Wilkes-Barre had known of and tolerated Collins's pattern of misconduct for some time. We disagree.

Section 1983 has no statute of limitations of its own. Rather, it borrows the state's statute of limitations for personal-injury torts. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Pennsylvania, that period is two years. 42 Pa. Cons. Stat. § 5524(7).

But federal law governs when a § 1983 claim accrues. *Wallace*, 549 U.S. at 388. "The standard rule," also known as the occurrence rule, is "that the limitations period commences when the plaintiff has a complete and present cause of action." *Rotkiske v. Klemm*, 140 S. Ct. 355, 360 (2019) (internal quotation marks omitted). "[A] claim accrues," and a plaintiff has such a cause of action, "when the last act needed to complete the tort occurs." *Nguyen v. Pennsylvania*, 906 F.3d 271, 273 (3d Cir. 2018). Plaintiffs here could have sued the city as soon as Collins coerced them into sex acts. Because these four plaintiffs waited more than two years to sue, their claims are untimely.

Plaintiffs counter that they could not have sued Wilkes-Barre back then. Only later, they stress, did they learn that it had turned a blind eye to Collins's pattern of preying on women. So they ask us to apply a delayed-accrual rule, tying accrual to when they knew or should have known of *both* their injury and all its causes.

3

Our circuit has not adopted the delayed-accrual rule. But even if it had, and even if that rule applied here, plaintiffs' claims came too late. Plaintiffs had enough information to suspect that Wilkes-Barre might have been deliberately indifferent to Collins's misconduct and investigate further. Collins had "developed a reputation among the community as females began to share their stories with each other about their forced sexual contacts with [him]." App. at 58. Indeed, one plaintiff admits that, right after she complained to police in 2009, an officer told her that "a lot of people" had accused him of sexual misconduct. *Id.* at 57–58. And plaintiffs all knew right away that Collins was a Wilkes-Barre police officer who had abused his authority. They could have sued Collins promptly, used discovery to unearth Wilkes-Barre's potential custom or policy of tolerating his abuse, and then added the city to the lawsuit within the statute of limitations. So they should have known of their injury and its causes.

The circuit precedents cited by plaintiffs are not on point. Only one of them delayed accrual of a sexual-assault claim. In that case, a police officer preyed on a teenage boy, paying him for sex acts over several years. *Ouellette v. Beaupre*, 977 F.3d 127, 131 (1st Cir. 2020). Decades later, the victim sued the police department for deliberate indifference. The First Circuit held that a delayed-accrual rule might save his claim from dismissal on statute-of-limitations grounds. It emphasized that when the victim reported his abuse to the police department, several officers followed up. *Id.* at 142–43. So "a reasonable person" might believe that the police department "took the allegations seriously and conducted an appropriate investigation." *Id.* at 143. Thus, he might never have suspected that it was deliberately indifferent.

4

Here, by contrast, there is no evidence that plaintiffs were led to believe that the police department was investigating their claims. So even if *Ouellette* is right, it does not apply here. There was plenty of reason to investigate the police department's responsibility.

To support delayed accrual, plaintiffs also cite *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010). But *Dique* did not delay accrual under federal law. Rather, it said it was doing so under a state law that tolled the statute of limitations. *Id.* at 185–88. Plaintiffs have not adequately preserved any such argument.

Regardless, *Dique* is factually inapt. The plaintiff in *Dique* had no reason to know that he had been wronged at all. In that case, New Jersey State Police had pulled over a Hispanic driver for an alleged speeding violation and found drugs. *Id.* at 183. Only a decade later did he learn that he might have been stopped because of racial profiling. *Id.* at 188. Because his stop seemed lawful in 1990, we held that a state discovery rule postponed accrual of his selective-enforcement claim until 2001. *Id.* Here, by contrast, plaintiffs knew right away that they were victims and could have sued immediately. Yet they did not. So even if a state rule can delay accrual, no such delay was warranted here.

\* \* \* \* \*

Even sympathetic plaintiffs must sue promptly. Collins allegedly abused his authority as a police officer to coerce these four plaintiffs into sex acts. They could have sued him right away, investigated whether the city of Wilkes-Barre had tolerated his abuse, and added it to the lawsuit. Instead, they waited until the statute of limitations had run. Because their suit came too late, we must affirm.

5