NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2945
_____

PHILIP WOODYARD,
                                    Appellant

v.

COUNTY OF ESSEX, Its Directors, Officers, Servants, Agents, Assignees,
Delegates, and/or Employees; ESSEX COUNTY PROSECUTOR'S OFFICE (ECPO),
Its Directors, Officers, Servants, Agents, Assignees, Delegates, and/or Employees;
DETECTIVE DAVID RUBIN (ECPO); DETECTIVE GUY TROGANI (ECPO);
DETECTIVE RICHARD CUNNIGHAM (ECPO); LIEUTENANT MICHAEL
DEMAIO; COUNTY OF ESSEX ECPO SUPERVISORS/EMPLOYEES; JOHN/JANE
DOE/S 1-10; CITY OF IRVINGTON, Its Directors, Officers, Servants, Agents,
Assignees, Delegates and/or Employees; IRVINGTON POLICE DEPARTMENT;
HAROLD WALLACE, Irvington Police Detective; ABC CORPORATION/S AND/OR
LAW ENFORCEMENT AGENCY/AGENCIES 1-5, (Fictitious name intending to
designate the Entity or entities responsible for causing Plaintiff's cause of action and
injuries); STATE OF NEW JERSEY, Office of Attorney General (OAG); ABC
CORPORATION AND/OR LAW ENFORCEMENT AGENCY, Agencies, Directors,
Officers, Servants, Agents and/or Employees John/Jane Doe/s 1-10
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2:10-cv-04506)
District Judge:  Honorable Stanley R. Chesler
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 1, 2013
Before:  FUENTES, VANASKIE and VAN ANTWERPEN, Circuit Judges

(Opinion filed: March 5, 2013)

_____

OPINION

_____

PER CURIAM

Philip Woodyard, proceeding pro se, appeals from an order of the United States District Court for the District of New Jersey granting Appellees' motions for summary judgment. For the following reasons, we will affirm.

I.

On August 14, 2007, Woodyard was arrested by detectives from the Essex County Prosecutor's Office ("ECPO") for the murder of Regina Grace and related weapons charges. He was arraigned on August 17, 2007. Approximately six months later, the State presented its case to a grand jury, and Woodyard was indicted on charges of first degree murder, fourth degree unlawful possession of a weapon, and third degree possession of a weapon for an unlawful purpose.

Woodyard's public defender filed pretrial motions challenging the out-of-court identifications of Woodyard made by Lavina Caldwell, Felisa Hardy, and Anita Mayhew. After his trial commenced on September 15, 2009, the trial court suppressed Caldwell and Mayhew's pretrial identifications, and the prosecution voluntarily withdrew Hardy's identification. The prosecution then filed a Recommendation of Dismissal, noting that although there was probable cause for Woodyard's arrest and indictment, it would not be able to meet its standard of proof. The trial court granted this motion for dismissal on October 1, 2009.

On February 25, 2010, Woodyard filed a complaint pursuant to 42 U.S.C. § 1983 in the New Jersey Superior Court for Essex County, alleging claims of false arrest, malicious prosecution, and false imprisonment. He did not properly serve Appellees with the complaint, and Appellees timely removed Woodyard's action to the District Court on September 2, 2010.[1] After conducting discovery, Appellees Township of Irvington, Township of Irvington Police Department, and Harold Wallace (collectively, the "Municipal Appellees") filed a motion for summary judgment, and Appellees the ECPO, David Rubin, Guy Trogani, Richard Cunningham, and Michael DeMaio (collectively, the "State Appellees") filed a motion for summary judgment. Woodyard filed a brief opposing both motions; however, on June 7, 2012, the District Court granted Appellees' motions. Woodyard then timely filed this appeal.

II.

We have jurisdiction pursuant to 28 U.S.C. § 1291 and exercise plenary review over the District Court's order granting summary judgment. See Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009). Summary judgment is appropriate only when the record "shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The moving party has the burden of demonstrating that there is no genuine issue as to any material fact, and summary judgment is to be entered if the evidence is such that a reasonable fact finder

---

[1] An exhibit attached to Appellees' notice of removal shows that Woodyard sought leave to file an Amended Complaint in the Superior Court. However, this Amended Complaint was apparently never filed or properly served upon Appellees.

3

could find only for the moving party." Watson v. Eastman Kodak Co., 235 F.3d 851, 854 (3d Cir. 2000) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

III.

On appeal, Woodyard asserts that the District Court erred by (1) disregarding his profession of innocence; (2) improperly relying on statements made by allegedly unreliable witnesses; (3) ignoring that the trial court judge suppressed the testimony of several state witnesses before trial; (4) failing to consider his allegation that the New Jersey Attorney General Guidelines for Preparing and Conducting Photo and Live Lineup Identification Procedures were violated during the investigation; and (5) failing to consider that he passed polygraph tests, DNA testing, and fingerprinting tests.

IV.

Section 1983 provides private citizens with a means to redress violations of federal law committed by state individuals. See 42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff "must establish that []he was deprived of a federal constitutional or statutory right by a state actor." Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009).

A.    Woodyard's Claims Against the Municipal Appellees

As an initial matter, Woodyard named both the Township of Irvington and the Irvington Police Department as defendants in his § 1983 suit. However, a municipal police department is not an entity separate from the municipality, see N.J. Stat. Ann. § 40A:14-118, and, therefore, the District Court properly dismissed Woodyard's claims as to the police department. See Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 n.4 (3d

4

Cir. 1997) (observing that "we treat the municipality and its police department as a single entity for purposes of section 1983 liability").

In his complaint, Woodyard alleges that Detective Wallace violated his constitutional rights by failing to follow the guidelines set forth by the Attorney General with respect to the identification procedure he utilized in his interview of Nina Nunez, by manipulating and suppressing evidence that Woodyard never knew the victim and was not a drug addict, and by failing to expose the other defendants' alleged unlawful acts by not exposing the inconsistencies in Nina Nunez's testimony. According to Woodyard, Detective Wallace's unconstitutional conduct led to his arrest and the initiation of criminal proceedings without probable cause.

"[Section] 1983 liability can extend beyond the arresting officer to other officials whose intentional actions set the arresting officer in motion." Berg v. Cnty. of Allegheny, 219 F.3d 261, 271-72 (3d Cir. 2000). Here, the record is clear that Detective Wallace used a computerized "mugbook" during his interview of Nina Nunez and that New Jersey's guidelines for identification procedures only apply to photographic arrays or live line-ups. See State v. Jankowski, 866 A.2d 229, 232-35 (N.J. Super. Ct. App. Div. 2005) (noting that "mugbooks" are not designed to confirm or eliminate suspects, but to see if a suspect can be found). Furthermore, nothing suggests that Detective Wallace coerced Nina Nunez's statements or knew that her second statement regarding her physical proximity to the murder was false in any way. Accordingly, Woodyard has failed to demonstrate that Detective Wallace made any false statements leading to his arrest and prosecution. See Reed v. City of Chicago, 77 F.3d 1049, 1053 (7th Cir. 2000).

5

Finally, we agree with the District Court that the Township of Irvington cannot be held liable under § 1983. Municipal liability under § 1983 only arises if the plaintiff demonstrates that "'execution of a government's policy or custom, whether made by its lawmakers or by those whose edits or acts may fairly be said to represent official policy, inflicts the injury.'" Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting Monell v. Dep't of Soc. Serv., 436 U.S. 658, 690-91 (1978)). A municipal policy encompasses a "statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Brown v. Muhlenberg Twp., 269 F.3d 205, 215 (3d Cir. 2001) (quoting Monell, 436 U.S. at 690). A custom, on the other hand, need not have received formal approval through official decision-making channels, but it "must have the force of law by virtue of the persistent practices" of municipal officials. Id. (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167 (1970)). Furthermore, a municipality cannot be constitutionally liable under the doctrine of respondeat superior. See City of Canton v. Harris, 489 U.S. 378, 385 (1989).

Woodyard has failed to provide any evidence that the Township of Irvington engaged in a pattern of behavior, or had in place a policy directing such behavior, that violated his constitutional rights. Nothing in the record supports Woodyard's assertion that the Township had a policy or custom leading to the suppression and manipulation of exculpatory evidence related to his case that led to his arrest and prosecution. He bases his claims against the Township on Detective Wallace's behavior; however, as discussed above, Wallace's conduct did not violate Woodyard's constitutional rights, and even if he

had, the Township cannot be held vicariously liable as his employer. Accordingly, the District Court properly granted summary judgment to the Municipal Appellees.

**B. Woodyard's Claims Against the State Appellees**

Woodyard has named the ECPO as a defendant based upon alleged unlawful acts committed by its higher-level employees. However, we agree with the District Court that that the ECPO, to the extent that it is a governmental entity which can be sued under § 1983, is entitled to Eleventh Amendment immunity. Under the Eleventh Amendment, "an unconsenting State is immune from suits brought in federal courts by her own citizens." Edelman v. Jordan, 415 U.S. 651, 663 (1974). This immunity protects both states and state agencies "as long as the state is the real party in interest." Fitchik v. N.J. Transit Rail Operations, 873 F.2d 655, 659 (3d Cir. 1989) (en banc). To determine whether the immunity applies, a court considers: "(1) the source of the money that would pay for the judgment; (2) the status of the entity under state law; and (3) the entity's degree of autonomy." Haybarger v. Lawrence Cnty. Adult Prob. & Parole, 551 F.3d 193, 198 (3d Cir. 2008) (citing Fitchik, 873 F.2d at 659). We have previously concluded that "[w]hen [New Jersey] county prosecutors engage in classic law enforcement and investigative functions, they act as officers of the State." Coleman v. Kaye, 87 F.3d 1491, 1505 (3d Cir. 1996). Eleventh Amendment immunity may not apply when prosecutorial defendants "perform administrative tasks unrelated to their strictly prosecutorial functions, such as . . . personnel decisions." Id.

Here, Woodyard alleges that the ECPO violated his Fourth Amendment rights by arresting and detaining him maliciously and without probable cause. He alleges that the

ECPO engaged in this conduct after obtaining evidence against him while investigating Regina Grace's murder and presenting that evidence to a grand jury. However, because these actions are clearly law enforcement functions, the ECPO is entitled to Eleventh Amendment immunity. Accordingly, the District Court properly granted summary judgment to the ECPO.

With regard to the individual State Appellees, Woodyard argues that they violated his Fourth Amendment rights by initiating criminal proceedings against him without probable cause. To prevail on a § 1983 malicious prosecution claim, a plaintiff must demonstrate that:

> (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

McKenna v. City of Phila., 582 F.3d 447, 461 (3d Cir. 2009) (citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)).

"[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge [at the moment the arrest was made] are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti v. N.J. State Police, 71 F.3d 480, 482 (3d Cir. 1995). When an arrest is made pursuant to a warrant, a plaintiff must establish a lack of probable cause "by a preponderance of the evidence: (1) that the police officer knowingly and deliberately, or with a reckless disregard for the truth, made false

8

statements or omissions that create a falsehood in applying for a warrant;" and (2) that "such statements or omissions are material, or necessary, to the finding of probable cause." Wilson v. Russo, 212 F.3d 781, 786-87 (3d Cir. 2000). While usually "the question of probable cause in a section 1983 damage suit is one for the jury," Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir. 1998), a district court can determine that probable cause exists as a matter of law and grant summary judgment when the evidence cannot reasonably support a contrary finding, see Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997).

Here, there is no evidence that officers deliberately withheld exculpatory evidence from the issuing judge or coerced Nina Nunez to obtain her statements. Instead, the judge who issued the arrest warrant reviewed the ECPO's entire file and found that Nunez's statements supported probable cause for Woodyard's arrest. See Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 790 (3d Cir. 2000) (noting that the statement of a single eyewitness may be sufficient to establish probable cause). Specifically, the judge determined that her statement and identification were sufficiently reliable even after being presented with her inconsistent statements about her distance from the scene.

Woodyard's argument that probable cause no longer existed by the time his case was presented to the grand jury is likewise without merit. A "grand jury indictment or presentment constitutes prima facie evidence of probable cause to prosecute"; this presumption will only be overcome "by evidence that the presentment was procured by fraud, perjury or other corrupt means." Rose v. Bartle, 871 F.2d 331, 353 (3d Cir. 1989). Both Nina Nunez and Lavina Caldwell testified before the grand jury. Woodyard appears

9

to believe that because Caldwell's out-of-court identification was ultimately suppressed, the grand jury lacked probable cause to indict him. However, Nunez's statements alone were sufficient for the grand jury to find probable cause, and Woodyard has not shown any evidence that the indictment was procured through fraud or perjury. The trial court's later suppression of certain witnesses' out-of-court identifications is irrelevant to a determination of whether probable cause supported the arrest warrant and the indictment. Accordingly, the District Court properly granted summary judgment to the State Appellees on Woodyard's malicious prosecution claim.[2]

Finally, Woodyard asserts that the State Appellees violated his Fourth Amendment rights by arresting and detaining him without probable cause. A complaint pursuant to § 1983 is "characterized as a personal injury claim and thus is governed by the applicable state's statute of limitations for personal-injury claims." Dique v. N.J. State Police, 603 F.3d 181, 185 (3d Cir. 2010) (citing Cito v. Bridgewater Twp. Police Dep't, 892 F.2d 23, 25 (3d Cir. 1989)); see also Wilson v. Garcia, 471 U.S. 261, 276 (1985). In New Jersey, § 1983 claims are subject to New Jersey's two-year statute of limitations on personal

---

[2] We agree with the District Court that the record indicates that Woodyard likely cannot satisfy the favorable termination element of his malicious prosecution claim. This element requires the final disposition to indicate a plaintiff's innocence. Donahue v. Gavin, 280 F.3d 371, 383 (3d Cir. 2002); see also Hector v. Watt, 235 F.3d 154, 156 (3d Cir. 2000) ("[A] plaintiff claiming malicious prosecution must be innocent of the crime charged in the underlying prosecution."). Here, the prosecution sought to dismiss the charges against Woodyard because it believed it could not meet its burden of proof after two witness identifications of Woodyard were suppressed by the trial court. Specifically, the prosecution explained that it did not wish to proceed to trial with just Nina Nunez's testimony because of double jeopardy attaching if Woodyard was acquitted. Therefore, it appears that the decision to dismiss did not reflect Woodyard's innocence, but rather was a result of the suppression of evidence.

injury actions.  See Dique, 603 F.3d at 185; see also N.J. Stat. Ann. § 2A:14-2.

Accordingly, Woodyard's claims are subject to this two-year period.

While state law governs the applicable statute of limitations, federal law controls

when a § 1983 claim accrues.  Wallace v. Kato, 549 U.S. 384, 388 (2007).  Accrual

occurs "when the plaintiff has a complete and present cause of action."  Id. (citations

omitted) (internal quotation marks omitted).  Here, the limitations period for Woodyard's

false arrest and imprisonment claims began when he became "detained pursuant to legal

process."  Id. at 397; see also Dique, 603 F.3d at 185-86 (determining that the cause of

action accrues when the complainant indisputably knows about the faults of the search);

Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998).  Woodyard was arraigned

on August 17, 2007; accordingly, his false arrest and imprisonment claims accrued upon

that date.  However, he did not file his complaint in state court until February 2010, well

more than two years after his arraignment.  Accordingly, the District Court properly

granted summary judgment to the State Appellees as to these claims.[3]

V.

For the foregoing reasons, we will affirm the District Court's order granting

Appellees' motions for summary judgment.

---

[3] Nevertheless, we note that Woodyard's false arrest and imprisonment claims are
meritless.  As with a claim alleging malicious prosecution, a plaintiff asserting a false
arrest claim must demonstrate that probable cause was lacking during the arrest.  Wright
v. City of Phila., 409 F.3d 595, 604 (3d Cir. 2005).  As discussed above, Woodyard's
malicious prosecution claim is meritless because probable cause supported both the arrest
warrant and the indictment issued against him.  Therefore, Woodyard cannot succeed on
the merits of his false arrest and imprisonment claims.

11