*386 Justice Scalia
delivered the opinion of the Court.
Petitioner filed suit under Rev. Stat. § 1979, 42 U. S. C. §1983, seeking damages for an arrest that violated the Fourth Amendment. We decide whether his suit is timely.
I
On January 17,1994, John Handy was shot to death in the city of Chicago. Sometime around 8 p.m. two days later, Chicago police officers located petitioner, then 15 years of age, and transported him to a police station for questioning. After interrogations that lasted into the early morning hours the next day, petitioner agreed to confess to Handy’s murder. An assistant state’s attorney prepared a statement to this effect, and petitioner signed it, at the same time waiving his Miranda rights.
Prior to trial in the Circuit Court of Cook County, petitioner unsuccessfully attempted to suppress his station house statements as the product of an unlawful arrest. He was convicted of first-degree murder and sentenced to 26 years in prison. On direct appeal, the Appellate Court of Illinois held that officers had arrested petitioner without probable cause, in violation of the Fourth Amendment. People v. Wallace, 299 111. App. 3d 9, 17-18, 701 N. E. 2d 87, 94 (1998). According to that court (whose determination we are not reviewing here), even assuming petitioner willingly accompanied police to the station, his presence there “esca *387 lated to an involuntary seizure prior to his formal arrest.” Id., at 18, 701 N. E. 2d, at 94. After another round of appeals, the Appellate Court concluded on August 31, 2001, that the effect of petitioner’s illegal arrest had not been sufficiently attenuated to render his statements admissible, see Brown v. Illinois, 422 U. S. 590 (1975), and remanded for a new trial. Judgt. order reported sub nom. People v. Wallace, 324 111. App. 3d 1139, 805 N. E. 2d 756 (2001). On April 10, 2002, prosecutors dropped the charges against petitioner.
On April 2,2003, petitioner filed this § 1983 suit against the city of Chicago and several Chicago police officers, seeking damages arising from, inter alia, his unlawful arrest.[1] The District Court granted summary judgment to respondents and the Court of Appeals affirmed. According to the Seventh Circuit, petitioner’s § 1983 suit was time barred because his cause of action accrued at the time of his arrest, and not when his conviction was later set aside. Wallace v. Chicago, 440 F. 3d 421, 427 (2006). We granted certiorari, 547 U. S. 1205 (2006).
II
Section 1983 provides a federal cause of action, but in several respects relevant here federal law looks to the law of the State in which the cause of action arose. This is so for the length of the statute of limitations: It is that which the State provides for personal-injury torts. Owens v. Okure, 488 U. S. 235,249-250 (1989); Wilson v. Garcia, 471 U. S. 261, 279-280 (1985). The parties agree that under Illinois law, this period is two years. 111. Comp. Stat., ch. 735, § 5/13-202 (West 2003). Thus, if the statute on petitioner’s cause of action began to run at the time of his unlawful arrest, or even at the time he was ordered held by a magistrate, his *388 § 1983 suit was plainly dilatory, even according him tolling for the two-plus years of his minority, see §5/13-211. But if, as the dissenting judge argued below, the commencement date for running of the statute is governed by this Court’s decision in Heck v. Humphrey, 512 U. S. 477 (1994), that date may be the date on which petitioner’s conviction was vacated, in which case the § 1983 suit would have been timely filed.
While we have never stated so expressly, the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law. The parties agree, the Seventh Circuit in this case so held, see 440 F. 3d, at 424, and we are aware of no federal court of appeals holding to the contrary. Aspects of § 1983 which are not governed by reference to state law are governed by federal rules conforming in general to common-law tort principles. See Heck, supra, at 483; Carey v. Piphus, 435 U. S. 247, 257-258 (1978). Under those principles, it is “the standard rule that [accrual occurs] when the plaintiff has ‘a complete and present cause of action,’ ” Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., 522 U. S. 192, 201 (1997) (quoting Rawlings v. Ray, 312 U. S. 96, 98 (1941)), that is, when “the plaintiff can file suit and obtain relief,” Bay Area Laundry, supra, at 201. There can be no dispute that petitioner could have filed suit as soon as the allegedly wrongful arrest occurred, subjecting him to the harm of involuntary detention, so the statute of limitations would normally commence to run from that date.
There is, however, a refinement to be considered, arising from the common law’s distinctive treatment of the torts of false arrest and false imprisonment, “[t]he . . . causefs] of action [that] provid[e] the closest analogy to claims of the type considered here,” Heck, supra, at 484. See 1 D. Dobbs, Law of Torts §47, p. 88 (2001). False arrest and false imprisonment overlap; the former is a species of the latter. “Every confinement of the person is an imprison *389 ment, whether it be in a common prison or in a private house, or in the stocks, or even by forcibly detaining one in the public streets; and when a man is lawfully in a house, it is imprisonment to prevent him from leaving the room in which he is.” M. Newell, Law of Malicious Prosecution, False Imprisonment, and Abuse of Legal Process §2, p. 57 (1892) (footnote omitted). See also 7 S. Speiser, C. Krause, & A. Gans, American Law of Torts § 27:2, pp. 940-942 (1990). We shall thus refer to the two torts together as false imprisonment. That tort provides the proper analogy to the cause of action asserted against the present respondents for the following reason: The sort of unlawful detention remediable by the tort of false imprisonment is detention without legal process, see, e. g., W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 11, p. 54, §119, pp. 885-886 (5th ed. 1984); 7 Speiser, supra, §27:2, at 943-944, and the allegations before us arise from respondents’ detention of petitioner without legal process in January 1994. They did not have a warrant for his arrest.
The running of the statute of limitations on false imprisonment is subject to a distinctive rule — dictated, perhaps, by the reality that the victim may not be able to sue while he is still imprisoned: “Limitations begin to run against an action for false imprisonment when the alleged false imprisonment ends.” 2 H. Wood, Limitation of Actions §187d(4), p. 878 (rev. 4th ed. 1916); see also 4 Restatement (Second) of Torts §899, Comment c (1977); A. Underhill, Principles of Law of Torts 202 (1881). Thus, to determine the beginning of the limitations period in this case, we must determine when petitioner’s false imprisonment came to an end.
Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process— when, for example, he is bound over by a magistrate or arraigned on charges. 1 Dobbs, supra, § 39, at 74, n. 2; Keeton, supra, § 119, at 888; H. Stephen, Actions for Malicious Prose *390 cution 120-123 (1888). Thereafter, unlawful detention forms part of the damages for the “entirely distinct” tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process.[2] Keeton, supra, § 119, at 885-886; see 1 F. Harper, F. James, & O. Gray, Law of Torts § 3.9, p. 3:36 (3d ed. 1996); 7 Speiser, supra, § 27:2, at 943-945. “If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself.” Keeton, supra, § 119, at 888; see also Heck, supra, at 484; 8 Speiser, supra, §28:15, at 80. Thus, petitioner’s contention that his false imprisonment ended upon his release from custody, after the State dropped the charges against him, must be rejected. It ended much earlier, when legal process was initiated against him, and the statute would have begun to run from that date, but for its tolling by reason of petitioner’s minority.[3]
*391 Petitioner asserts that the date of his release from custody must be the relevant date in the circumstances of the present suit, since he is seeking damages up to that time. The theory of his complaint is that the initial Fourth Amendment violation set the wheels in motion for his subsequent conviction and detention: The unlawful arrest led to the coerced confession, which was introduced at his trial, producing his conviction and incarceration. As we have just explained, at common law damages for detention after issuance of process or arraignment would be attributable to a tort other than the unlawful arrest alleged in petitioner’s complaint — and probably a tort chargeable to defendants other than the respondents here. Even assuming, however, that all damages for detention pursuant to legal process could be regarded as consequential damages attributable to the unlawful arrest, that would not alter the commencement date for the statute of limitations. “Under the traditional rule of accrual... the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages. The cause of action accrues even though the full extent of the injury is not then known or predictable.” 1 C. Corman, Limitation of Actions § 7.4.1, pp. 526-527 (1991) (footnote omitted); see also 54 C. J. S., Limitations of Actions §112, p. 150 (2005). Were it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief.
We conclude that the statute of limitations on petitioner’s § 1988 claim commenced to run when he appeared before the examining magistrate and was bound over for trial. Since more than two years elapsed between that date and the filing *392 of this suit — even leaving out of the count the period before he reached his majority — the action was time barred.
Ill
This would end the matter, were it not for petitioner’s contention that Heck v. Humphrey, 512 U. S., at 477, compels the conclusion that his suit could not accrue until the State dropped its charges against him. In Heck, a state prisoner filed suit under §1983 raising claims which, if true, would have established the invalidity of his outstanding conviction. We analogized his suit to one for malicious prosecution, an element of which is the favorable termination of criminal proceedings. Id., at 484. We said:
“[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court’s issuance of a writ of habeas corpus, 28 U. S. C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under §1983.” Id., at 486-487 (footnote omitted).
We rested this conclusion upon “the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments.” Id., at 486. “ ‘Congress,’ ” we said, “ ‘has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement, and that specific determination must override the general terms of § 1983.’ ” Id., at 482 (quoting Preiser v. Rodriguez, 411 U. S. 475, 490 (1973)).
*393 As the above excerpts show, the Heck rule for deferred accrual is called into play only when there exists “a conviction or sentence that has not been . . . invalidated,” that is to say, an “outstanding criminal judgment.” It delays what would otherwise be the accrual date of a tort action until the setting aside of an extant conviction which success in that tort action would impugn. We assume that, for purposes of the present tort action, the Heck principle would be applied not to the date of accrual but to the date on which the statute of limitations began to run, that is, the date petitioner became held pursuant to legal process. See supra, at 389-390. Even at that later time, there was in existence no criminal conviction that the cause of action would impugn; indeed, there may not even have been an indictment.
What petitioner seeks, in other words, is the adoption of a principle that goes well beyond Heck: that an action which would impugn an anticipated future conviction cannot be brought until that conviction occurs and is set aside. The impractieality of such a rule should be obvious. In an action for false arrest it would require the plaintiff (and if he brings suit promptly, the court) to speculate about whether a prosecution will be brought, whether it will result in conviction, and whether the pending civil action will impugn that verdict, see Heck, 512 U. S., at 487, n. 7 — all this at a time when it can hardly be known what evidence the prosecution has in its possession. And what if the plaintiff (or the court) guesses wrong, and the anticipated future conviction never occurs, because of acquittal or dismissal? Does that event (instead of the Heck-required setting aside of the extant conviction) trigger accrual of the cause of action? Or what if prosecution never occurs — what will the trigger be then?
We are not disposed to embrace this bizarre extension of Heck. If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in ac *394 cord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended. See id., at 487-488, n. 8 (noting that “abstention may be an appropriate response to the parallel state-court proceedings”); Quackenbush v. Allstate Ins. Co., 517 U. S. 706, 730 (1996). If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, Heck will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit. Edwards v. Balisok, 520 U. S. 641, 649 (1997); Heck, 512 U. S., at 487.
There is, however, one complication that we must address here. It arises from the fact that § 1983 actions, unlike the tort of malicious prosecution which Heck took as its model, see id., at 484, sometimes accrue before the setting aside of— indeed, even before the existence of — the related criminal conviction. That of course is the case here, and it raises the question whether, assuming that the Heck bar takes effect when the later conviction is obtained, the statute of limitations on the once valid cause of action is tolled as long as the Heck bar subsists. In the context of the present case: If petitioner’s conviction on April 19, 1996, caused the statute of limitations on his (possibly) impugning but yet-to-be-filed cause of action to be tolled until that conviction was set aside, his filing here would have been timely.
We have generally referred to state law for tolling rules, just as we have for the length of statutes of limitations. Hardin v. Straub, 490 U. S. 536, 538-539 (1989); Board of Regents of Univ. of State of N. Y. v. Tomanio, 446 U. S. 478, 484-486 (1980). Petitioner has not brought to our attention, nor are we aware of, Illinois cases providing tolling in even remotely comparable circumstances. (Indeed, petitioner did not even argue for such tolling below, though he supported its suggestion at oral argument.) Nor would we be inclined to adopt a federal tolling rule to this effect. Under such a regime, it would not be known whether tolling is appropriate by reason of the Heck bar until it is established that the *395 newly entered conviction would be impugned by the not-yet-filed, and thus utterly indeterminate, § 1983 claim.[4] It would hardly be desirable to place the question of tolling vel non in this jurisprudential limbo, leaving it to be determined by those later events, and then pronouncing it retroactively. Defendants need to be on notice to preserve beyond the normal limitations period evidence that will be needed for their defense; and a statute that becomes retroactively extended, by the action of the plaintiff in crafting a conviction-impugning cause of action, is hardly a statute of repose.[5]
*396 Justice Breyer argues in dissent that equitable tolling should apply “so long as the issues that [a § 1983] claim would raise are being pursued in state court.” Post, at 403. We know of no support (nor does the dissent suggest any) for the far-reaching proposition that equitable tolling is appropriate to avoid the risk of concurrent litigation. As best we can tell, the only rationale for such a rule is the concern that “petitioner would have had to divide his attention between criminal and civil cases.” Post, at 400. But when has it been the law that a criminal defendant, or a potential criminal defendant, is absolved from all other responsibilities that the law would otherwise place upon him? If a defendant has a breach-of-contract claim against the prime contractor for his new home, is he entitled to tolling for that as well while his criminal case is pending? Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs. Besides its never-heard-of-before quality, the dissent’s proposal suffers from a more ironic flaw. Although the dissent criticizes us for having to develop a system of stays and dismissals, it should be obvious that the omnibus tolling solution will require the same. Despite the existence of the new tolling rule, some (if not most) plaintiffs will nevertheless file suit before or during state criminal proceedings. How does the dissent propose to handle such suits? Finally, the dissent’s *397 contention that law enforcement officers would prefer the possibility of a later § 1983 suit to the more likely reality of an immediate filing, post, at 403-404, is both implausible and contradicted by those who know best. As no fewer than 11 States have informed us in this litigation, “States and municipalities have a strong interest in timely notice of alleged misconduct by their agents. ” Brief for State of Illinois et al. as Amici Curiae 18.
* * *
We hold that the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process. Since in the present case this occurred (with appropriate tolling for the plaintiff’s minority) more than two years before the complaint was filed, the suit was out of time. The judgment of the Court of Appeals is affirmed.

It is so ordered.

 All of petitioner’s other state and federal claims were resolved adversely to him and are not before us. We expressly limited our grant of certiorari to the Fourth Amendment false-arrest claim. See 547 U. S. 1205 (2006). The city of Chicago is no longer a party to this suit.

 We have never explored the contours of a Fourth Amendment malicious-prosecution suit under § 1983, see Albright v. Oliver, 510 U. S. 266,270-271,275 (1994) (plurality opinion), and we do not do so here. See generally 1 M. Schwartz, Section 1983 Litigation §3.18[C], pp. 3-605 to 3-629 (4th ed. 2004) (noting a range of approaches in the lower courts). Assuming without deciding that such a claim is cognizable under § 1983, petitioner has not made one. Petitioner did not include such a claim in his complaint. He in fact abandoned a state-law malicious-prosecution claim in the District Court, and stated, in his opposition to respondents’ first motion for summary judgment, that “Plaintiff does not seek to raise ... a malicious prosecution claim under § 1983,” Record, Doc. 17, p. 3, n. 5. In this Court, he has told us that respondents are “mistaken in characterizing petitioner’s cause of action as involving “unwarranted prosecution.’ ” Reply Brief 12.

 This is not to say, of course, that petitioner could not have filed suit immediately upon his false arrest. While the statute of limitations did not begin to run until petitioner became detained pursuant to legal process, he was injured and suffered damages at the moment of his arrest, *391 and was entitled to bring suit at that time. See Adler v. Beverly Hills Hospital, 594 S. W. 2d 153, 156 (Tex. Civ. App. 1980) (“We may concede that a person falsely imprisoned has the right to sue on the first day for his detention”).

 Had petitioner filed suit upon his arrest and had his suit then been dismissed under Heck, the statute of limitations, absent tolling, would have run by the time he obtained reversal of his conviction. If under those circumstances he were not allowed to refile his suit, Heck would produce immunity from § 1983 liability, a result surely not intended. Because in the present case petitioner did not file his suit within the limitations period, we need not decide, had he done so, how much time he would have had to refile the suit once the Heck bar was removed.

 Justice Stevens reaches the same result by arguing that, under Stone v. Powell, 428 U. S. 465 (1976), the Heck bar can never come into play in a § 1983 suit seeking damages for a Fourth Amendment violation, so that “a habeas remedy was never available to [petitioner] in the first place.” Post, at 399 (opinion concurring in judgment). This reads Stone to say more than it does. Under Stone, Fourth Amendment violations are generally not cognizable on federal habeas, but they are cognizable when the State has failed to provide the habeas petitioner “an opportunity for full and fair litigation of a Fourth Amendment claim.” 428 U. S., at 482. Federal habeas petitioners have sometimes succeeded in arguing that Stone’s general prohibition does not apply. See, e.g., Herrera v. LeMaster, 225 F. 3d 1176, 1178 (2000), aff’d on this point, 301 F. 3d 1192, 1195, n. 4 (CA10 2002) (en banc); United States ex rel. Bostick v. Peters, 3 F. 3d 1023, 1029 (CA7 1993); Agee v. White, 809 F. 2d 1487, 1490 (CA11 1987); Doescher v. Estelle, 666 F. 2d 285, 287 (CA5 1982); Boyd v. Mintz, 631 F. 2d 247, 250-251 (CA3 1980); see also 2 R. Hertz & J. Liebman, Federal Habeas Corpus Practice and Procedure §§27.1-27.3, pp. 1373-1389 (5th ed. 2005). At the time of a Fourth Amendment wrong, and at the time of conviction, it cannot be known whether a prospective § 1983 plaintiff will receive a full and fair opportunity to litigate his Fourth Amendment claim. It thus remains the case that a conflict with the federal ha *396 beas statute is possible, that a Fourth Amendment claim can necessarily imply the invalidity of a conviction, and that if it does it must, under Heck, be dismissed.
Insofar as Justice Stevens simply suggests that Heck has no bearing here because petitioner received a full and fair opportunity to litigate his Fourth Amendment claim in state court, the argument is equally untenable. At the time that petitioner became detained pursuant to legal process, it was impossible to predict whether this would be true. And even at the point when his limitations period ended, state proceedings on his conviction were ongoing; full and fair opportunity up to that point was not enough. Stone requires full and fair opportunity to litigate a Fourth Amendment claim “at trial and on direct review.” 428 U. S., at 494-495, n. 37 (emphasis added).