In the

# United States Court of Appeals
## For the Seventh Circuit

No. 13-1203

BILLY JULIAN,

*Plaintiff-Appellant,*

*v.*

SAM HANNA, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:11-cv-01536-TWP-DML — **Tanya Walton Pratt**, *Judge.*

ARGUED SEPTEMBER 24, 2013 — DECIDED OCTOBER 21, 2013

Before POSNER, TINDER, and HAMILTON, *Circuit Judges.*

POSNER, *Circuit Judge.* The plaintiff in this suit under 42 U.S.C. § 1983 appeals from the dismissal (with prejudice) of his complaint. The complaint charges three Indiana police officers, plus the Town (Frankton) that employed two of them, plus the county sheriff, with malicious prosecution in violation of the due process clause of the Fourteenth Amendment. Other torts are alleged as well; we'll come back to them. There are two superfluous defendants: a school that

employed one of the officers, who was also employed by the Town (which is all that matters); and the County, which was dismissed but remains listed in the caption of the appeal.

The district judge dismissed the malicious prosecution claim on the alternative grounds that it was untimely and that Indiana state law provides an adequate remedy for malicious prosecution, barring recourse to section 1983.

The complaint alleges the following facts: On a March night in 2001 a burglar set fire to Frankton's public high school with an acetylene torch, causing millions of dollars in damages. The defendant officers were assigned to investigate the arson. One of them, without any lawful reason, decided that Billy Julian should be a suspect. The officers coerced another suspect, and other witnesses as well, to accuse Julian. The defendant officers knew the accusations were false—the officers had fabricated them and fed them to the witnesses. But in April 2001 an information was filed against Julian charging him with arson, burglary, and attempted theft, and in March 2003 he was convicted of these crimes and sentenced to 15 years in prison. The conviction and sentence were affirmed the next year. *Julian v. State*, 811 N.E.2d 392 (Ind. App. 2004).

Julian sought post-conviction relief in the state courts and eventually obtained it by proving that a key prosecution witness, who had testified that he had met Julian in the high school parking lot, shortly before the fire, to sell Julian marijuana, had not left his home that night. (In fact he'd been on house arrest and wearing an ankle bracelet, and the bracelet's monitoring system recorded him as having been home all that night.) Julian was released from prison in 2006. In September of the following year, after an unsuccessful ap-

peal by the state, *State v. Julian*, 2007 WL 1576354 (Ind. App. May 31, 2007), his post-conviction relief became final. *State v. Julian*, 2007 WL 4592378 (Ind. Sept. 25, 2007) (denying transfer). But he had not been acquitted; and in December 2007 the court in which he had been tried scheduled a retrial of the charges against him.

The defendants threatened Julian in an effort to deter him from filing a suit for malicious prosecution. On the advice of lawyers whom he consulted he decided to defer filing such a suit until the judgment in his retrial. The retrial was originally scheduled for May 2008, but the trial date kept getting rescheduled. The last date on which it was scheduled to begin was in November 2009. That date came and went without a trial. In July of the following year the state dismissed all the charges against Julian. He filed this suit in November 2011.

The Indiana statute of limitations applicable to claims of personal injury is two years, Ind. Code § 34-11-2-4(a); *Commercial Credit Corp. v. Ensley*, 264 N.E.2d 80, 85 (Ind. App. 1970), so that is the limitations period for a malicious prosecution claim brought in Indiana under 42 U.S.C. § 1983, because it's a personal-injury claim. See *Wilson v. Garcia*, 471 U.S. 261, 271 (1985); *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012); *Irwin Mortgage Corp. v. Marion County Treasurer*, 816 N.E.2d 439, 443 (Ind. App. 2004). The defendants argued that Julian's claim accrued when his conviction was reversed, which was way more than two years before he filed this suit. The district judge agreed. But she was mistaken. Under both state and federal law a malicious prosecution claim does not accrue until the criminal proceeding that gave rise to it ends in the claimant's favor. *Heck v. Humphrey*,

512 U.S. 477, 484 (1994); *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009); *Butt v. McEvoy*, 669 N.E.2d 1015, 1017 (Ind. App. 1996); 3 Dan B. Dobbs et al., *The Law of Torts* § 590, p. 402 (2d ed. 2011); *Restatement (Second) of Torts* § 658 (1977). That didn't happen until the charges against Julian were dismissed, and that was less than two years before he sued. Although his conviction had been reversed much earlier and the reversal affirmed, he had not been ordered acquitted; nor had the criminal charges against him been dropped—rather, the case had been remanded for a retrial. Until the retrial was held, and ended favorably to him, or the charges against him were dropped without a retrial, which is what happened, the criminal case had not terminated in his favor. Julian's claim thus is timely.

So we come to the merits. The defendants' principal argument is that Julian could not bring a claim for malicious prosecution under section 1983, but only under Indiana law. We've held that a federal claim for malicious prosecution is actionable only if the state fails to provide an adequate alternative, whether called a claim of malicious prosecution or something else. *Parish v. City of Chicago*, 594 F.3d 551, 552 (7th Cir. 2009); *Bontkowski v. Smith*, 305 F.3d 757, 760 (7th Cir. 2002); *Newsome v. McCabe*, 256 F.3d 747, 750–51 (7th Cir. 2001). These decisions derive mediately from the position taken in the concurring opinion of Justices Kennedy and Thomas in *Albright v. Oliver*, 510 U.S. 266, 285–86 (1994), pursuant to the rule of *United States v. Marks*, 430 U.S. 188, 193 (1977), that "when a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds,'" *Gregg v. Georgia*, 428

U.S. 153, 169 n. 15 (1976) (plurality opinion). But ultimately our decisions derive from *Parratt v. Taylor*, 451 U.S. 527 (1981), which held that a complaint based on the Fourteenth Amendment's due process clause does not state a claim if the injury complained of was the isolated bad act of a state employee rather than the product of a state policy. But both the concurrence in *Albright*, and the broader holding of *Parratt* (broader because not limited to malicious prosecution), are explicit that to preclude the federal remedy there must be an adequate state remedy. See also *Zinermon v. Burch*, 494 U.S. 113, 128–29 (1990); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Cushing v. City of Chicago*, 3 F.3d 1156, 1164 (7th Cir. 1993); *Alexandre v. Cortes*, 140 F.3d 406, 411–12 (2d Cir. 1998). In its absence a plaintiff denied due process and deprived of liberty as a result of that denial can obtain relief under section 1983. See, e.g., *Belcher v. Norton*, 497 F.3d 742, 751–53 (7th Cir. 2007); *Mahoney v. Kesery*, 976 F.2d 1054, 1059–61 (7th Cir. 1992); *Albright v. Oliver*, 975 F.2d 343, 345–47 (7th Cir. 1992), aff'd, 510 U.S. 266 (1994); *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1069–70 and n. 4 (9th Cir. 2004); *Castellano v. Fragozo*, 352 F.3d 939, 957–58 (5th Cir. 2003) (en banc).

Most federal courts of appeals go further, holding that section 1983 authorizes a federal claim of malicious prosecution regardless of what alternative remedy a state provides, at least if the plaintiff had been seized in the course of the malicious prosecution, which the cases believe justifies grounding the malicious prosecution claim in the Fourth Amendment, thus avoiding the *Parratt* principle. *Pitt v. District of Columbia*, 491 F.3d 494, 510–11 (D.C. Cir. 2007); *Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 99–101 (1st Cir. 2013); *Swartz v. Insogna*, 704 F.3d 105, 111–12 (2d Cir. 2013); *Gallo v. City of Philadelphia*, 161 F.3d 217, 221–22 (3d Cir. 1998); *Evans*

*v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012); *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007); *Novitsky v. City of Aurora*, 491 F.3d 1244, 1257–58 (10th Cir. 2007); *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004). Julian's lawyer asks us to overrule *Newsome* and join those other circuits. That is overreach. This is not a proper case in which to consider such a proposal. We're about to see that Julian, if his evidence holds up, wins under *Newsome*; and if it doesn't hold up, he loses under the decisions of the other circuits as well. For the elements of a federal malicious prosecution claim are the same whether the claim is based on the Fourth Amendment or on the due process clause of the Fourteenth Amendment. Whether or not his claim holds up must abide a trial in the district court.

The alternative state remedy for a malicious prosecution engineered by rogue police officers would normally be damages obtainable in a suit charging malicious prosecution in violation of state common law. Indiana authorizes such suits, e.g., *City of New Haven v. Reichhart*, 748 N.E.2d 374, 378–79 (Ind. 2001); *Alexander v. United States*, 721 F.3d 418, 422–23 (7th Cir. 2013) (Indiana law)—but grants absolute immunity to state officers, such as the defendants in this case. Ind. Code § 34-13-3-3(6); *Butt v. McEvoy*, *supra*, 669 N.E.2d at 1017–18; *Alexander v. McKinney*, 692 F.3d 553, 556 (7th Cir. 2012) (Indiana law). Interpreting the same Indiana immunity statute, we held in *Belcher v. Norton*, *supra*, 497 F.3d at 751–53, that it deprives plaintiffs who assert due process claims against state officers of an adequate alternative remedy to a federal suit.

Inexcusably the defendants' briefs do not mention *Belcher*. Instead they try an end run, arguing that Julian could

have invoked state remedies against which the officers
would have had no absolute immunity: he could have sued
for false arrest (indeed could have filed such a suit under
section 1983, invoking the Fourth Amendment, *Johnson v.
Saville*, 575 F.3d 656, 663–64 (7th Cir. 2009); *McCullah v. Gad-
ert*, 344 F.3d 655, 659-60 (7th Cir. 2003), as well as under
Indiana law) and false imprisonment. *Row v. Holt*, 864
N.E.2d 1011, 1016 (Ind. 2007). But such charges would not
give rise to *adequate* remedies for the wrongs that Julian al-
leges.

He had been arrested shortly after the arson but released
the next week. Upon being convicted, however, he was im-
prisoned, and he was not released until 2006, by which time
he had served 38 months in prison. The damages he could
hope to receive for his false arrest would be slight because of
the brevity of the period in which he had been held in jail
before being formally charged. Because suits for false arrest
and false imprisonment provide remedies only for detention
that occurs before formal charges kick off an actual prosecu-
tion, and because Indiana law treats false arrest and false
imprisonment as a single tort when they spring from deten-
tion without probable cause, *Bentz v. City of Kendallville*, 577
F.3d 776, 780 (7th Cir. 2009), Julian would be able to recover
for those torts only the damages he sustained during the
week or so that he was detained before being formally
charged. *Wallace v. Kato*, 549 U.S. 384, 389–90 (2007); *Johnson
v. Blackwell*, 885 N.E.2d 25, 30 (Ind. App. 2008). These dam-
ages would be only a fraction of the total damages attribut-
able to his malicious prosecution, for those damages accu-
mulated over the entire period that began with his arrest and
ended only when the charges against him were dismissed—
a period of 9 years and 3 months. Throughout this period,

when he was not actually in prison he was (or so he alleges, and quite plausibly) tormented by fear of being imprisoned or re-imprisoned and unable to obtain employment. "The plaintiff [in a malicious prosecution suit] may recover compensation for any arrest or imprisonment, including damages for discomfort or injury to his health, or loss of time and deprivation of the society of his family. He may recover any reasonable expenses to which he has been put in defending the prosecution and establishing his innocence, including attorney's fees in the criminal proceeding, although such fees in the action for malicious prosecution itself are normally not recoverable." W. Page Keeton et al., *Prosser and Keeton on Torts* § 119, pp. 887–88 (5th ed. 1984).

If Indiana defined false arrest or false imprisonment so broadly that it largely overlapped malicious prosecution, the remedies it provides to someone in Julian's situation might be adequate; for "adequacy" is a loose concept, and there is enough play in its joints to allow considerable variance in state remedies for the injuries inflicted by malicious prosecution, cf. *Parratt v. Taylor*, *supra*, 451 U.S. at 543–44 (illustrative are N.Y. Court of Claims Act § 8; Kan. Stat. § 75-6105(a), (c), and 705 ILCS 505/8(c), (d))—but of course only within limits. Conventional definitions of false arrest and false imprisonment, adopted by Indiana, see *Earles v. Perkins*, 788 N.E.2d 1260, 1265 (Ind. App. 2003); cf. *Wallace v. Kato*, *supra*, 549 U.S. at 388–90, do not make the remedies for those torts adequate substitutes for a remedy for malicious prosecution. After being released from prison in May 2006, Julian remained in limbo for more than four years. Limbo is not as bad as hell, but it's sufficiently bad that it can't be written off completely. Yet that is what the defendants ask us to do: recognize no remedy for malicious prosecution by Indiana public

officers, leaving the defendant remediless if he manages to avoid jail or prison for *any* of the time during which he's being maliciously prosecuted. For the defendants' counsel stated at oral argument that even if Julian's false arrest had lasted for only a day, a suit for false arrest would provide a sufficient alternative state remedy to a suit for malicious prosecution to bar him from bringing a federal suit for malicious prosecution.

At least the defendants don't argue that if Julian can bring a federal suit he would still have to bring suits for false arrest and false imprisonment if he wanted to obtain full compensation. That argument would fail because the damages resulting from the false arrest and false imprisonment were foreseeable and therefore actionable consequences of the malicious prosecution, as noted by Keeton et al., *supra*, § 119, pp. 885–86, 888.

Defense counsel exceeded the bounds of responsible advocacy by arguing in the alternative that because the absolute immunity from suits against state officers for malicious prosecution was decreed by the Indiana legislature, it satisfies due process—"legislative due process"—and therefore bars this suit. Were that correct it would mean that the Indiana legislature, provided only that it complied with its procedures governing legislative enactment, could with impunity strip residents of Indiana of all their federal and state constitutional rights.

In holding that Indiana's failure to provide an adequate remedy for malicious prosecution by public officers opens the door to federal malicious prosecution suits against such officers, we don't mean to belittle the state's interest in limiting officers' liability. The grant of tort immunities to public

employees involved in law enforcement is commonplace, though in the case of police officers as distinct from judges and prosecutors the immunities normally are qualified rather than absolute, and a qualified immunity would not protect the deliberately wrongful (indeed outrageous) conduct alleged in Julian's complaint. *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011); *Buckley v. Fitzsimmons*, 20 F.3d 789, 796–97 (7th Cir. 1994); *Pierce v. Gilchrist*, 359 F.3d 1279, 1299–300 (10th Cir. 2004); *Spurlock v. Satterfield*, 167 F.3d 995, 1005–06 (6th Cir. 1999).

An alternative to immunity is indemnification of damages imposed on an officer for conduct within the scope of his employment. That is a common defense, Theodore Eisenberg & Stewart Schwab, "The Reality of Constitutional Tort Litigation," 72 *Cornell L. Rev.* 641, 685–86 (1987)—and Indiana has adopted it. Ind. Code § 34-13-3-5(d), (e). So Indiana provides both protections to its police.

Both are devices for preventing public officers from being made timid in the performance of their duties by fear of being sued by persons whom they arrest or investigate. Indemnification provides somewhat less protection, because an officer indemnified for damages imposed on him will merely have shifted the cost to his employer, or the state (his ultimate employer), and the cost he has thus imposed may be harmful to his career. But indemnification provides more protection to the victims of official misconduct, because police officers are likely to be judgment-proof. Another alternative to immunity is a cap on damages, a common feature of public employee tort liability, see, e.g., 705 ILCS 505/8(d) ($100,000 cap); Ga. Code § 50-21-29(b)(1) ($1,000,000); Utah Code § 63G-7-604(1)(a) (an oddly specific $583,900), and, to

our knowledge, unchallenged in cases governed by the *Parratt* doctrine. This is not to say that they can't be challenged. Nor do we want to be understood as approving the specific caps in the statutes that we've cited as illustrative. But whatever the lowest damages cap may be that would leave the state remedy adequate, it is not zero.

A state cannot be permitted to create blanket immunities from federal suits for violations of federal law (such as the Fourteenth Amendment's due process clause), as Indiana has done in this case. Or has it? For another wrinkle, though unremarked by the parties or the district judge, is the presence of the Town of Frankton and the county sheriff as defendants. The basis of their being joined is an allegation that policymaking officials of the Town, and the sheriff, condone police misconduct. E.g., *Vodak v. City of Chicago*, 639 F.3d 738, 747–49 (7th Cir. 2011). These allegations present the question whether Julian would have an adequate state remedy against governmental entities, given that the Indiana Tort Claims Act makes clear that there is no remedy against the individual employees for anything they did that was within the scope of their employment, construed very broadly. See Ind Code §§ 34-13-3-5(b), (c). Although there is no suggestion in any of the briefs, or in anything said by the district judge, that Indiana has tried to confer immunity on local governments sued for (in effect) complicity in malicious prosecution by their employees, it has: "A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from … the initiation of a judicial or an administrative proceeding." Ind. Code § 34-13-3-3(6). So Julian no more has an adequate state law remedy against the Town and the sheriff than he does against the police officers.

The complaint contains other claims besides malicious prosecution, but only one received even passing mention by the district judge and in the briefs, and then only, and summarily, in Julian's briefs. That is a claim of withholding exculpatory evidence from the defense in Julian's criminal proceeding, in violation of the rule of *Brady v. Maryland*, 373 U.S. 83 (1963). If Julian prevails on his federal malicious prosecution claim, his claim under *Brady* will become academic because success in it would not yield any additional damages. But if the malicious prosecution claim fails—maybe the evidence will show, improbable as that now seems, that there was probable cause to prosecute Julian for the high school fire—the *Brady* claim will provide a fallback for him.

The district judge dismissed the claim as barred by Indiana's two-year statute of limitations. Unlike the malicious prosecution claim, the *Brady* claim may have accrued when Julian was granted a new trial in September 2007, more than two years before the filing of the present suit. That was before the charges against him were dropped; and ordinarily a *Brady* claim does not accrue until that happens. *Johnson v. Dossey*, 515 F.3d 778, 781–82 (7th Cir. 2008); *Newsome v. McCabe*, *supra*, 256 F.3d at 752. But although Julian's ordeal was not over (because he was subject to being retried), his *Brady* claim was ripe. The exculpatory evidence had been revealed; the harm the alleged *Brady* violation had done could not be affected by a retrial. But it would be tidier to postpone accrual until the charges were dropped, as otherwise Julian might have had to bring a separate section 1983 suit while defending against criminal charges in a retrial.

We needn't pursue the issue. Julian doesn't challenge the district judge's accrual determination; he challenges her ig-

noring his contention that the defendants should be equitably estopped to plead the statute of limitations as a defense to his *Brady* claim. A defendant who prevents a timely filing of a suit against him, for example by promising the plaintiff not to plead the statute of limitations, is estopped (that is, forbidden) to plead the statute of limitations. E.g., *Shropshear v. Corporation Counsel of City of Chicago*, 275 F.3d 593, 595 (7th Cir. 2001); *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450–51 (7th Cir. 1990); *Lukovsky v. City & County of San Francisco*, 535 F.3d 1044, 1052 (9th Cir. 2008). And that is what Julian alleges happened: the defendants intimidated him into delaying the filing of his civil suit until the criminal proceeding ended with the dismissal of the charges against him in July 2010. If this is true, the limitations clock did not start to tick until then, which would place his November 2011 filing well within the two-year limitations period. The district judge will have to address the equitable-estoppel issue on remand.

The judgment is reversed and the case remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.