TRAXLER, Chief Judge,
concurring in part and dissenting in part:
I concur in parts III, IVA, and V of the majority opinion. However, I respectfully dissent from parts II and IV.B. First, I believe that Owens’ Brady claims were untimely because they accrued when he discovered the exculpatory and impeaching evidence that had not been disclosed, not when the proceeding was subsequently terminated via entry of the nolle prosequi. Second, I would conclude that the district court correctly determined that the individual defendants were entitled to qualified immunity because it was not clearly established in the spring of 1988 that a police officer’s failure to disclose exculpatory evidence made the officer potentially liable for a violation of a criminal defendant’s constitutional rights.
I.
I turn first to the question of whether Owens’ claims are completely time-barred. Because “[t]here is no federal statute of limitations for § 1983 claims, ... the state limitations period which governs personal injury actions is applied.” Lewis v. Richmond City Police Dep’t, 947 F.2d 733, 735 (4th Cir.1991) (per curiam); see Wallace v. Kato, 549 U.S. 384, 387, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007). In this case, we apply Maryland’s three-year limitations period for personal injury actions. See Md.Code Ann., Cts. & Jud. Proc. § 5-101. This much is beyond debate. When Owens’ § 1983 claim accrued, however, is a more difficult question.
“[T]he accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law.” Wallace, 549 U.S. at 388, 127 S.Ct. 1091. In addressing this very issue, the Supreme Court stated that the “standard rule” for determining the date a cause of action accrues is to determine “when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief.” Id. (internal quotation marks and citations omitted). Generally speaking, a federal claim “accrues when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred,” and therefore “we typically determine the accrual of a § 1983 action by looking to the event that should have alerted the typical lay person to protect his or her rights.” D'Ambrosio v. Marino, 747 F.3d 378, 384 (6th Cir.2014) (internal alterations and quotation marks *405 omitted); see Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 955 (4th Cir. 1995) (en banc) (explaining that under federal law, a cause of action accrues “when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action.”); cf. Wallace, 549 U.S. at 388, 127 S.Ct. 1091 (observing that, under the standard rule, there can be no dispute that petitioner could have filed suit as soon as the allegedly wrongful arrest occurred ... so that statute of limitations would normally commence to run from that date).
Owens’ claim is based on the defendant police officers’ failure to disclose exculpatory evidence—a due process claim that clearly arises pursuant to Brady v. Maryland. Thus, “application of the general rule would indicate that [plaintiffs § 1983] cause of action [based on Brady] accrued— and the limitations period began-when [plaintiff] discovered that the exculpatory evidence in question had not been disclosed to him.” D’Ambrosio, 747 F.3d at 384 (emphasis added); see Julian v. Hanna, 732 F.3d 842, 849 (7th Cir.2013). Owens clearly knew about at least some of the exculpatory evidence—specifically the fact that James Thompson gave police several different versions of his testimony before and during trial—as early as October 1989, when the Maryland Court of Special Appeals recounted the shifting testimony in an opinion affirming Owens’ conviction. At the very latest, Owens was aware of the exculpatory and impeachment evidence at issue in this appeal in June 11, 2008, when his counsel filed a motion to exclude that evidence at his retrial and detailed the evidence discovered after the original trial.
But this does not end the analysis. In determining the accrual date of a § 1983 claim, we should consider the most analogous common-law cause of action as a guidepost. Assuming the most analogous common law tort is malicious prosecution, its “favorable termination” requirement constitutes a “distinctive rule” of accrual that displaces the general rule that a claim accrues when the plaintiff knows or has reason to know of his injury. See Wallace, 549 U.S. at 388, 127 S.Ct. 1091. Because the favorable-termination element “constitutes a prerequisite for recovery” on a malicious prosecution claim, it naturally “establishes the time from which the claim accrues.” See Lambert v. Williams, 223 F.3d 257, 262 n. 3 (4th Cir.2000).
I part ways with my friends in the majority on the application of the “favorable termination” requirement in this context. The majority notes that in order to satisfy the favorable termination element of a malicious prosecution claim, the plaintiff must demonstrate that the criminal proceedings against him have been terminated in such a way that they cannot be revived. See Poventud v. City of New York, 750 F.3d 121, 130-31 (2nd Cir.2014) (en banc) (“Under the common law any final termination of a criminal proceeding in favor of the accused, such that the proceeding cannot be brought again, qualifies as a favorable termination for purposes of a malicious prosecution action.”). Following this approach, they conclude that the proceedings were not formally terminated until the nolle prosequi was entered.
In my view, the majority adheres a bit too rigidly to the common-law analogue rather than using it as a “starting point” that “provides a useful guidepost in making sense of alleged constitutional injuries” for determining the contours of claims of constitutional violations under § 1983. Becker v. Kroll, 494 F.3d 904, 913-14 (10th Cir.2007); see Heck, 512 U.S. at 493, 114 S.Ct. 2364 (recognizing that the common law is a “ ‘starting point’ for the analysis under § 1983” but that our analysis should never be “slavishly derived” from the com *406 mon law) (internal quotation marks omitted) (Souter, J., concurring); Carey v. Piphus, 435 U.S. 247, 258, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (recognizing common-law tort rules as the “starting point for the inquiry under § 1983”).
Indeed, it is appropriate to consider the underlying purpose of the elements of the common law analogue to determine whether they can be imported for accrual purposes under § 1983. See Heck, 512 484, 114 S.Ct. 2364 (taking into account the purpose of the favorable termination requirement). The favorable termination requirement is intended to guard against “the possibility of the claimant ... succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.” Kossler v. Crisanti, 564 F.3d 181, 187 (3d Cir.2009) (en banc) (internal quotation marks omitted). Thus, this element is satisfied where a prior criminal case against the plaintiff has been disposed of in a way that indicates the plaintiffs innocence. See Murphy v. Lynn, 118 F.3d 938, 948 (2d Cir.1997); see Restatement (Second) of Torts § 660 cmt. a; see also Taylor v. Gregg, 36 F.3d 453, 456 (5th Cir.1994) (per curiam); Uboh v. Reno, 141 F.3d 1000, 1004 (11th Cir.1998).
This reasoning makes little sense when considering the accrual date for Brady claims under § 1983. For a Brady claim, the plaintiff need only demonstrate “that prejudice resulted from the suppression.” Vinson, 436 F.3d at 420. “[A] defendant’s right to pre-trial disclosure under Brady is not conditioned on his ability to demonstrate that he would or even probably would prevail at trial if the evidence were disclosed, much less that he is in fact innocent.” Poventud, 750 F.3d at 133 (internal quotation marks omitted). Brady is meant to ensure a fair trial; “[t]he remedy for a Brady claim is therefore a new trial, as proof of the constitutional violation need not be at odds with [defendant’s] guilt.” Id.; see id. (“[T]he remedy for a Brady violation is vacatur of the judgment of conviction and a new trial in which the defendant now has the Brady material available to [him].”); accord Julian, 732 F.3d at 849 (“Unlike [a] malicious prosecution claim, [a] Brady claim may have accrued when [the criminal defendant/ § 1983 plaintiff] was granted a new trial ... before the charges against him were dropped; and ordinarily a Brady claim does not accrue until that happens. But although [plaintiffs] ordeal was not over (because he was subject to being retried), his Brady claim was ripe. The exculpatory evidence had been revealed; the harm the alleged Brady violation had done could not be affected by a retrial.” (internal citations omitted)).[1]
Accordingly, I would conclude that the proceedings were “favorably terminated” when Owens’ conviction was vacated and he was granted a new trial on June 7, 2007. The Brady violation was complete; “the harm the alleged Brady violation had done could not be affected by a retrial.” *407 Julian, 732 F.3d at 849 His claim was therefore ripe and, assuming he knew about the undisclosed exculpatory evidence in question at that point, the limitations period began running at that time. Alternatively, as previously noted, Owens at the latest was aware of the exculpatory evidence by June 11, 2008, when his attorney filed a motion to exclude that evidence at his retrial. Either way, Owens’ claims are untimely.
II.
As discussed above, I believe Owens’ claims are time-barred. But even if the claims were timely filed, I believe his claims against the individual officers fail on qualified immunity grounds. To satisfy the “clearly established” prong of the qualified immunity analysis, “a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right.” Reichle v. Howards, — U.S. -, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012) (alterations and internal quotation marks omitted). That is, “existing precedent must have placed the statutory or constitutional question beyond debate.” Ashcroft v. al-Kidd, — U.S. -, 131 S.Ct. 2074, 2083, 179 L.Ed.2d 1149 (2011). “This clearly established standard protects the balance between vindication of constitutional rights and government officials’ effective performance of their duties by ensuring that officials can reasonably anticipate when their conduct may give rise to liability for damages.” Reichle, 132 S.Ct. at 2093 (emphasis added) (alteration and internal quotation marks omitted). In applying the “clearly established” standard, we “ordinarily need not look beyond the decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose. If a right is recognized in some other circuit, but not in this one, an official will ordinarily retain the immunity defense.” Edwards v. City of Goldsboro, 178 F.3d 231, 251 (4th Cir.1999) (internal quotation marks, alterations, and citation omitted). In deciding “whether the right at issue was clearly established at the time of the officer’s conduct,” Meyers v. Baltimore Cnty., Md., 713 F.3d 723, 731 (4th Cir.2013) (emphasis added) (internal quotation marks omitted), we are interested in relevant decisions that were decided before the conduct currently at issue occurred, not decisions announced afterward—even if those post-dated decisions involved underlying violations that occurred prior to the alleged violations in this case, see Fields v. Prater, 566 F.3d 381, 390 (4th Cir.2009) (qualified immunity protects defendants from being “retroactively subject to significant penalties at law for which they did not have proper notice”).
Owens was convicted by a jury in March 1988 and sentenced in April 1988. Accordingly, for qualified immunity to be overcome, it must have been clearly established at least by early 1988 that a police officer violated a criminal defendant’s due process rights by failing to furnish exculpatory evidence to a prosecutor. Cf. United States v. Smith Grading & Paving, Inc., 760 F.2d 527, 532 (4th Cir.1985) (“No due process violation occurs as long as Brady material is disclosed to a defendant in time for its effective use at trial.”). Owens relies on a variety of decisions that both pre-date and post-date defendants’ conduct in the spring of 1988. In my view, none of these decisions had placed the “constitutional question beyond debate,” al-Kidd, 131 S.Ct. at 2083, by the late spring of 1988. Accordingly, I would affirm the district court’s conclusion that the individual officers were entitled to qualified immunity.
A. Decisions Pre-Dating April 1988
Owens contends that law enforcement officers have been on notice since this *408 court’s 1964 decision in Barbee v. Warden, Md. Penitentiary, 331 F.2d 842 (4th Cir.1964), that an officer’s failure to disclose exculpatory evidence to the prosecutor made the officer potentially liable for a violation of a criminal defendant’s constitutional rights. In Barbee, we granted a defendant’s habeas petition to set aside his conviction “because the prosecutor failed, either through lack of his personal knowledge or for some other reason, to disclose at the trial potentially exculpatory evidence in the possession of the police.” Id. at 843. In doing so, the court rejected the idea that the state’s failure to disclose exculpatory evidence was excused when the police failed to turn such information over to the state’s attorney. Barbee therefore stands for the proposition that a police officer’s knowledge of exculpatory evidence will be imputed to the prosecutor for Brady purposes. See United States v. Sutton, 542 F.2d 1239, 1241 n. 2 (4th Cir.1976) (reversing conviction for failure to disclose exculpatory evidence despite prosecutor’s lack of knowledge because “legally what [the officer] knew must be imputed to the prosecutor” (citing Barbee, 331 F.2d at 846)). Barbee simply did not establish that a law enforcement officer violates a defendant’s due process rights by failing to turn over potentially exculpatory evidence to the prosecutor; see Jean v. Collins, 155 F.3d 701, 710 (4th Cir.1998) (en banc) (“Jean I ”) (explaining that Barbee did not “imposef] a constitutional duty on police officers to give evidence to a prosecutor” but “held simply that the police’s knowledge of such evidence would be imputed to the prosecutor in deciding whether the prosecutor had fulfilled his Brady duties”), vacated on other grounds, 526 U.S. 1142, 119 S.Ct. 2016, 143 L.Ed.2d 1029 (1999).
To the same effect is United States v. Sutton, which reversed a bank robbery conviction on direct appeal on the ground that the government failed to disclose exculpatory evidence. See 542 F.2d at 1240. The court reached this conclusion even though the prosecuting attorney apparently had no knowledge of such evidence, concluding that “legally what [the officer] knew must be imputed to the prosecutor.” Id. at 1241 n. 2. And Boone v. Paderick, also cited by the majority, granted habeas relief based on the prosecution’s failure to disclose a law enforcement agent’s promise of favorable treatment to a key government witness. See 541 F.2d 447, 448 (4th Cir.1976). Boone even less clearly supports this proposition as the prosecutor testified in the habeas proceedings that he did not deny that the officer told him of the promises and stated that he simply could not remember.
B. Decisions Post-Dating April 1988
Owens also relies on Goodwin v. Metts, a 1989 decision in which the court let stand a jury award against a police officer on a common law malicious prosecution cause of action. See 885 F.2d 157, 166-67 (4th Cir. 1989). Goodwin did not address any due process claims based on Brady. Owens’ reliance on Goodwin is based on the court’s statement that “[a] reasonable officer would have known [in 1983, when the salient events occurred,] that a prosecution carried out without probable cause or disclosure of exculpatory information would violate the constitutional rights of the criminal defendants.” Id. at 164. Assuming Owens is correct that Goodwin puts officers on notice that they “could be liable for their failure to disclose exculpatory evidence,” Brief of Appellant at 40, such notice was not provided until September 1989, when Goodwin was decided. Owens’ trial took place between February and April 1988; thus, Goodwin would have been of no value to the defendant police officers in this ease, whose failure to dis *409 close evidence occurred before Goodwin was decided.
Owens makes much of the fact that the conduct at issue in Goodwin—for which the individual officers there were held liable—happened in 1983. But for purposes of determining “clearly established law” in the context of qualified immunity, the relevant precedents “can only be applied prospectively” and “cannot be imputed retroactively to an officer in this circuit whose allegedly tortious conduct predated” the decision in question. Hill v. Crum, 727 F.3d 312, 322 (4th Cir.2013). Thus, it only matters when the case was decided, not when the underlying conduct occurred.[2] As the next section demonstrates, our court later was sharply divided over the value of these cases to a plaintiff suing individual officers.
C. Jean v. Collins I & II
Both Owens and the individual defendants claim support from the two Jean v. Collins decisions. These decisions reveal only that, even in 1998, this court was very much split over whether Barbee, Goodwin and Carter established that a police officer could be liable for his failure to disclose exculpatory information. In Jean I, we affirmed the district court’s conclusion that the defendant police officers were entitled to qualified immunity because “the relevant sources of law do not clearly establish that in 1982 police themselves labored under federal constitutional duties with respect to the disclosure of evidence to the prosecution.” 155 F.3d at 712. Of particular relevance were the majority’s observations regarding Barbee:
We believe that Jean misapprehends the essential holding of Barbee. Barbee did not require police, as a constitutional matter, to furnish evidence to a prosecutor. Instead, as this circuit later explained, Barbee held simply that the police’s knowledge of such evidence would be imputed to the prosecutor in deciding whether the prosecutor had fulfilled his Brady duties.
Id. at 710. Regarding Goodwin and Carter, the en banc court recognized that these decisions “now [in 1989] provide notice to police officers that they can be subject to monetary damages under section 1983 for failure to disclose exculpatory evidence to the prosecutor,” but that because “[t]hese decisions ... postdate the events in this case ... we do not adopt the dissent’s theory that proper notice to defendants can be notice after the fact.” Id. at 710 n. 3.[3]
On remand, the en banc court did not revisit the clearly established prong, again affirming, this time by an equally divided court, the district court’s grant of summary judgment. See Jean v. Collins, 221 F.3d 656 (4th Cir.2000) (“Jean IF) The concurring opinion for affirmance, having *410 concluded that there was no constitutional violation because the officer’s failure to disclose was in good faith, took the position that that the Brady disclosure duty is one that rests with the prosecution rather than with the police. See id. at 660-62. By contrast, the dissenting opinion, arguing for reversal, assumed the contrary view that officers owe an independent duty under Brady to disclose exculpatory information. See id. at 664.
Although judicial unanimity is not required for a constitutional right to be clearly established, that the judges of this court so fervently disagreed in 1998 and 2000 about the existence, contours and scope of an officer’s constitutional duty to disclose exculpatory evidence strongly suggests that the right was not clearly established at the time of Owens’ trial in 1988. See Swanson v. Powers, 937 F.2d 965, 968 (4th Cir.1991) (“Since qualified immunity is appropriate if reasonable officers could disagree on the relevant issue, it surely must be appropriate when reasonable jurists can do so.” (citation omitted)); see also Wilson v. Layne, 526 U.S. 603, 618, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (“If judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy.”).
In sum, I would conclude that the defendant police officers are entitled to qualified immunity as it was not clearly established at the time they failed to disclose exculpatory evidence that police officers had a constitutional duty to disclose exculpatory evidence to criminal defendants. Accordingly, I respectfully dissent and vote to affirm the grant of qualified immunity to the individual officers.[4]

. In finding my position unfaithful to the judicial policy against the creation of conflicting resolutions, my colleagues incorrectly assume that if a Brady claim and a malicious prosecution claim produce different results, they will have produced conflicting results. But that is not so for reasons I have already suggested. A Brady claim under § 1983 seeks relief, regardless of the plaintiff's guilt or innocence, for the deprivation of a fair trial as a result of the prosecution's failure to disclose exculpatory evidence. A malicious prosecution claim seeks to remedy the seizure of the plaintiff pursuant to legal process that was unsupported by probable cause. It would be perfectly consistent to succeed on a Brady claim but fail on a malicious prosecution claim.

. Like Goodwin, Carter v. Burch, 34 F.3d 257 (4th Cir.1994), was decided too late to be of any value to the officers in this case. Carter upheld an award of nominal damages against a police officer who failed to disclose exculpatory evidence in connection with a trial occurring in March 1988; the court, however, did not decide Carter until 1994.

. Thus, Jean I did not acknowledge that Goodwin and Carter provided such notice with respect to conduct occurring after 1982. Since Goodwin and Carter were decided in 1989 and 1994, respectively, it would not be possible for those decisions to afford notice with respect to conduct occurring prior to 1989.
Even though Jean I was vacated and remanded, see 526 U.S. 1142, 119 S.Ct. 2016, 143 L.Ed.2d 1029 (1999), for reconsideration in light of Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999), the Supreme Court did not address Jean I's conclusion that, as of 1982, police had no constitutional duly to provide evidence to a prosecutor.

. My friends in the majority characterize as “extraordinary” my view that none of the decisions they cite-most notably Barbee, Sutton, Boone and Goodwin—placed the "constitutional question beyond debate,” al-Kidd, 131 S.Ct. at 2083, for officers' conduct occurring prior to the issuance of Goodwin, the most recent of these. Given that more than half of the members of the en banc court in 1998 espoused this view, including two judges currently still sitting on the court, it is hardly a stunning or unsupportable one. See Jean v. Collins, 155 F.3d 701 (4th Cir.1998) (enbanc) (authored by Wilkinson, C.J., and joined by Niemeyer, J.), vacated on other grounds, 526 U.S. 1142, 119 S.Ct. 2016, 143 L.Ed.2d 1029 (1999).